749 N.W.2d 137 (2008)
275 Neb. 693
Mary Elizabeth WAGNER, appellee,
v.
James Brian WAGNER, appellant.
No. S-06-427.
Supreme Court of Nebraska.
May 16, 2008.
*139 Riko E. Bishop, of Perry, Guthery, Haase & Gessford, P.C., L.L.O., for appellant.
Kevin A. Brostrom and Stacie A. Goding, of Lauritsen, Brownell, Brostrom, Stehlik, Myers & Daugherty, P.C., L.L.O., for appellee.
HEAVICAN, C.J., and WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
GERRARD, J.
The question presented in this appeal is whether the trial court's file-stamped letter memorandum to the parties, directing the plaintiff to prepare a final decree, was itself a final judgment.[1] The Nebraska Court of Appeals determined that it was, and dismissed an appeal taken after the entry of the final decree, reasoning that the notice of appeal was untimely.[2]
This case illustrates why trial courts should take care to ensure that regardless of how a final judgment is prepared, only the signed final order is filed with the clerk of the court.[3] The clerk should not file stamp any document prepared by the trial court that is not a court order intended to have legal effect. But a filing that does not finally dispose of a case does not become a final, appealable order just because it is file stamped, and the trial court's order in this case was clearly not meant to be a final determination of the rights and liabilities of the parties. Therefore, we conclude that the letter in this case was not a final, appealable order, and reverse the decision of the Court of Appeals.

PROCEDURAL HISTORY
This case began with Mary Wagner's petition to dissolve her marriage to James Wagner. The parties reached an agreement on child custody and support, and other miscellaneous issues, but the case proceeded to trial on the valuation and division of the marital estate, alimony, and attorney fees. Trial was held on August 22 and December 7, 2005.
A letter from the trial judge dated January 10, 2006, was sent to the parties, and file stamped on January 11. The letter stated that "[b]y this letter I am rendering decision on the trial of this matter." The letter directed Mary's counsel to draft a decree incorporating the judge's findings, submit it to James' counsel for approval, and then submit it to the court. The letter incorporated the previous stipulation of the parties as to child custody, and made several specific findings with respect to the valuation and division of the marital estate. The letter also awarded alimony and attorney fees. But the letter did not make any jurisdictional findings with respect to the dissolution of the marriage,[4] nor did it make the required finding that the marriage was irretrievably broken.[5] And the letter did not, in point of fact, order the marriage dissolved.
Instead, as directed by the court, a decree of dissolution was prepared by Mary's *140 counsel, and approved as to form by James' counsel. That decree, which included the necessary jurisdictional findings and actually dissolved the marriage, was rendered by the trial court on February 7, 2006. James filed a timely motion for new trial and to alter or amend the judgment. On March 14, the court overruled the motion for new trial, but amended the judgment to expressly provide that the alimony award would terminate on the death of either party. On April 12, James filed his notice of appeal.
The Court of Appeals dismissed James' appeal.[6] The Court of Appeals found that the trial court's letter was "a written, signed document which set forth the court's determination of all issues presented for resolution. In that document, the court specifically indicated that it was `rendering decision on the trial of this matter.'"[7] The Court of Appeals determined that the letter operated to render judgment, "because it was a written, signed notation of the relief granted or denied," and had been entered when it was file stamped by the clerk of the court.[8] Thus, the Court of Appeals determined that the letter was a final judgment. And neither a timely notice of appeal, nor a timely tolling motion, had been filed with respect to the letter. Therefore, the Court of Appeals concluded that James' appeal was untimely, and dismissed the appeal.[9]
James filed a petition for further review, which we granted. The appeal was submitted without oral argument, pursuant to Neb. Ct. R. of Prac. 11B(1) (rev.2006).

ASSIGNMENT OF ERROR
James assigns, restated, that the Court of Appeals erred in dismissing his appeal for lack of jurisdiction.

STANDARD OF REVIEW
A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.[10] And regarding a question of law, we reach a conclusion independent of the determination reached by the Court of Appeals.[11]

ANALYSIS
Section 25-1301(1) defines a judgment as "the final determination of the rights of the parties in an action." And an order entered by a court may affect a substantial right and be subject to review as a final order although it could not or need not be properly denominated a judgment.[12] Section 25-1301(3) also explains how a final judgment or order is rendered by a court. "The entry of a judgment, decree, or final order occurs when the clerk of the court places the file stamp and date upon the judgment, decree, or final order." And "[f]or purposes of determining the time for appeal, the date stamped on the judgment, decree, or final order shall be the date of entry."
The problem in this case is that the trial court's letter memorandum was signed and file stamped, which is all that § 25-1301 requires for the court to render a judgment. *141 Thus, the question presented is whether the trial court's file-stamped letter memorandum was a final judgment. We have recently decided two cases addressing similar issues, and a review of those cases is essential to our analysis of the instant case.
In Hosack v. Hosack,[13] the district court entered a file-stamped journal entry in which the court dissolved the parties' marriage, divided the marital estate, and awarded alimony. The journal entry provided that a decree was to be prepared by counsel, provided to opposing counsel for review, and "`presented to the Court for signature no later than November 15, 2002.'"[14] The decree was prepared and entered, and an appeal was taken. The Court of Appeals summarily dismissed the appeal, finding it was untimely because it was not taken within 30 days of the file-stamped journal entry, which the Court of Appeals determined to be a final, appealable order.[15]
On further review, we reversed, finding that the journal entry "left certain matters unresolved."[16] We noted that in the journal entry, "counsel was directed to advise the district court by written motion if the court had failed to rule on any material issue presented."[17] And we noted that "[t]he journal entry contemplated that the decree was to be prepared for opposing counsel's review...."[18] Therefore, we concluded that "the journal entry was not the final determination of the rights of the parties in this action."[19]
We also took the opportunity to expressly disapprove of the practice of a trial court's filing of a journal entry which describes an order that is to be entered at a subsequent date, explaining that confusion "`can be avoided if trial courts will, as they should, limit themselves to entering but one final determination of the rights of the parties in a case.'"[20] We expressly directed that "[o]nly the signed final order should be filed with the clerk of the court."[21]
Then, in City of Ashland v. Ashland Salvage,[22] we again faced a file-stamped journal entry followed by a subsequent order. But the situation was distinguishable from Hosack, in that the plaintiff in City of Ashland sought both declaratory and injunctive relief. The journal entry disposed of the entire merits of the case, but directed the plaintiff to prepare an "`Order of Permanent Injunction'" that the court entered later.[23] Because, unlike Hosack, the journal entry in City of Ashland disposed of all claims, it was a final, appealable order. And because the notice of appeal in City of Ashland had been taken from the journal entry and not the subsequent permanent injunction, we concluded we had jurisdiction over the appeal.[24]
*142 In the present case, as set forth in more detail above, the trial court sent a letter to counsel, setting forth the court's determination of several of the issues presented for resolution. The letter was, however, file stamped by the clerk of the court. The letter directed counsel for one of the parties to prepare another document and present it to opposing counsel for approval as to form. The Court of Appeals concluded that the letter was a final, appealable order, and dismissed the appeal.[25]
The Court of Appeals, however, erred in two respects. First, the letter had not disposed of all the issues presented by the pleadings. Most pertinently, the letter had not found that the marriage was irretrievably broken, or dissolved the marriage. Section 42-361(1) requires, even if the issue is uncontested, that "the court, after hearing, shall make a finding whether the marriage is irretrievably broken." In this case, the trial court's letter had not addressed the most fundamental issue presented by the case: whether the marriage should be dissolved. It could not have been rendered as a final judgment within the meaning of § 25-1301.
But just as important is the fact that, as in Hosack,[26] the trial court's letter was written only in contemplation of a decree to be entered later. In this regard, our decision in Dawes v. Wittrock Sandblasting & Painting[27] is instructive. In Dawes, the problem was that the trial judge's final order had failed to expressly discuss certain matters presented by the pleadings. We noted the well-established proposition that when multiple issues are presented to a trial court for simultaneous disposition in the same proceeding and the court decides some of the issues, while reserving other issues for later determination, the court's determination of less than all the issues is an interlocutory order and is not a final order for the purpose of an appeal.[28] But we found the situation in Dawes distinguishable, because the issues not discussed were not reserved for later determination.
Instead, in Dawes, no issues were reserved for further determination, and it was "apparent, from an examination of the award and the procedural posture of the case," that the order was intended to serve as a final adjudication of the rights and liabilities of the parties.[29] "As a practical matter, the substantial effect of the judgment was to dispose of the entire case, end the litigation, and leave nothing for the court to do."[30] Therefore, we found that the judge had rendered a final, appealable order.[31]
Those principles are applicable here, but they lead to the opposite conclusion. Here, the court's direction to counsel to prepare a final decree, and submit that decree for approval to opposing counsel and then the court, clearly indicates that the letter was not intended to be the court's final adjudication of the rights and *143 liabilities of the parties. As in Hosack,[32] the court's preliminary findings contemplated that the decree was to be prepared for opposing counsel's review and were not the final determination of the rights of the parties. And City of Ashland[33] is distinguishable, because in that case, the trial court's journal entry was a complete adjudication of all the issues presented, and the subsequent injunction was merely an order to enforce the terms of the previously entered final judgment. Such orders, entered in an action after judgment, are not uncommon in Nebraska law, and do not affect the status of the final judgment they are intended to enforce.[34]
Because of the potential for confusion, trial courts should be very careful if they decide to inform the parties of their findings before entering a final judgment. In particular, trial courts, and the clerks of those courts, should not file stamp any court-issued document that is not meant to take legal effect. Instead, "the trial court should notify the parties of its findings and intentions as to the matter before the court by an appropriate method of communication" without file stamping any document.[35] And only the signed final order should be filed with the clerk of the court.[36]
Although we have said these things before, the problem keeps recurring. It is absolutely essential that trial court judges consider this problem, discuss it with their court clerks, and review their procedures for communicating with the parties and preparing and entering final orders, so that it does not happen again. The courts of this state should not be procedural mine-fields for unwitting litigants.
Nonetheless, we also hold that court-issued findings that direct a party to prepare a final order memorializing those findings, and to submit that order to an opposing party for approval before submitting it to the court, are not a final determination of the rights of the parties and do not become a final order or judgment if file stamped. To the extent that the Court of Appeals' majority opinion in Peterson v. Peterson[37] provides otherwise, it is disapproved. Instead, we agree with the dissenting opinion in Peterson, that "there [must] first be a final determination of the rights of the parties before there is a judgment to be either rendered or entered" and that in circumstances such as these, the court's preliminary findings "are not the final determination of the rights of the parties and the final determination will be made only after counsel prepares a decree in conformance with the findings, submits the same to opposing counsel for approval, and then to the court for rendition and entry."[38]
Therefore, we conclude that James' assignment of error has merit, and the Court of Appeals erred in dismissing his appeal. Upon reversing a decision of the Court of Appeals, we may consider, as we deem appropriate, some or all of the assignments of error the Court of Appeals did *144 not reach.[39] But due to its jurisdictional conclusion, the Court of Appeals did not reach any of James' assignments of error, and we conclude that under these circumstances, it is appropriate for the Court of Appeals to consider James' arguments in the first instance.[40]

CONCLUSION
Based on the foregoing reasoning, we reverse the decision of the Court of Appeals, and remand the cause to the Court of Appeals for consideration of the merits of James' appeal.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] See Neb.Rev.Stat. § 25-1301 (Cum.Supp. 2006).
[2] See Wagner v. Wagner, 16 Neb.App. 328, 743 N.W.2d 782 (2008), citing Neb.Rev.Stat. § 25-1912 (Cum.Supp.2006).
[3] See Hosack v. Hosack, 267 Neb. 934, 678 N.W.2d 746 (2004).
[4] See Neb.Rev.Stat. § 42-349 (Reissue 2004).
[5] See Neb.Rev.Stat. § 42-361 (Reissue 2004).
[6] See Wagner, supra note 2.
[7] Id. at 334, 743 N.W.2d at 786.
[8] See, id. at 335, 743 N.W.2d at 786; § 25-1301(3).
[9] See id.
[10] State ex rel. Bruning v. R.J. Reynolds Tobacco Co., 275 Neb. 310, 746 N.W.2d 672 (2008).
[11] Liming v. Liming, 723 N.W.2d 89 (2006).
[12] See, Neb.Rev.Stat. § 25-1902 (Reissue 1995); State v. Loyd, 269 Neb. 762, 696 N.W.2d 860 (2005).
[13] Hosack, supra note 3.
[14] Id. at 936, 678 N.W.2d at 750.
[15] Hosack v. Hosack, 11 Neb.App. lxxiii (No. A-02-1405, May 30, 2003).
[16] Hosack, supra note 3, 267 Neb. at 939, 678 N.W.2d at 752.
[17] Id.
[18] Id.
[19] Id. at 939-40, 678 N.W.2d at 752.
[20] Id. at 940, 678 N.W.2d at 752, quoting Federal Land Bank v. McElhose, 222 Neb. 448, 384 N.W.2d 295 (1986).
[21] Id. at 940, 678 N.W.2d at 753.
[22] City of Ashland v. Ashland Salvage, 271 Neb. 362, 711 N.W.2d 861 (2006).
[23] Id. at 366, 711 N.W.2d at 866.
[24] Id.
[25] See Wagner, supra note 2.
[26] Hosack, supra note 3.
[27] Dawes v. Wittrock Sandblasting & Painting, 266 Neb. 526, 667 N.W.2d 167 (2003), disapproved in part on other grounds, Kimminau v. Uribe Refuse Serv., 270 Neb. 682, 707 N.W.2d 229 (2005).
[28] See, id.; Huffman v. Huffman, 236 Neb. 101, 459 N.W.2d 215 (1990); Hamm v. Champion Manuf. Homes, 11 Neb.App. 183, 645 N.W.2d 571 (2002).
[29] Dawes, supra note 27, 266 Neb. at 536, 667 N.W.2d at 180.
[30] Id. at 537, 667 N.W.2d at 180-81.
[31] Id.
[32] Hosack, supra note 3.
[33] City of Ashland, supra note 22.
[34] See, e.g., Blaine v. Blaine, 275 Neb. 87, 744 N.W.2d 444 (2008); Heathman v. Kenney, 263 Neb. 966, 644 N.W.2d 558 (2002); § 25-1902. Compare Koziol v. Koziol, 10 Neb.App. 675, 636 N.W.2d 890 (2001).
[35] See Hosack, supra note 3, 267 Neb. at 940, 678 N.W.2d at 752-53. Accord City of Ashland, supra note 22.
[36] Id.
[37] Peterson v. Peterson, 14 Neb.App. 778, 714 N.W.2d 793 (2006).
[38] Id. at 787-88, 714 N.W.2d at 800 (Irwin, Judge, dissenting) (emphasis in original).
[39] See Hosack, supra note 3.
[40] See In re Interest of Devin W. et al., 270 Neb. 640, 707 N.W.2d 758. 270 Neb. 640, 707 N.W.2d 758 (2005).