756 N.W.2d 172 (2008)
17 Neb. App. 53
Kathleen BELITZ, now known as Kathleen Monaco, appellant,
v.
John F. BELITZ, Jr., appellee.
No. A-07-1172.
Court of Appeals of Nebraska.
September 16, 2008.
*173 Kathleen Monaco, pro se.
Joan Watke Stacy, Omaha, for appellee.
SIEVERS, MOORE, and CASSEL, Judges.
*174 SIEVERS, Judge.
This appeal presents, among other jurisdictional issues, the question of whether a trial court can extend the time in which to appeal to this court beyond that time provided by Nebraska statutes through a provision for such extension in its order.

PROCEDURAL BACKGROUND
This ongoing custody dispute now makes its third appearance in this court. In Belitz v. Belitz, 8 Neb.App. 41, 587 N.W.2d 709 (1999), we affirmed the decree of dissolution of the Douglas County District Court which awarded Kathleen Belitz, now known as Kathleen Monaco, custody of the parties' three minor daughters and granted her permission to remove the children to the State of Illinois. Thereafter, on a motion to modify decided on July 18, 2002, the district court awarded John F. Belitz, Jr., custody of the parties' minor children and the children were returned to the State of Nebraska. We affirmed that decision. See Belitz v. Belitz, A-02-973, 2003 WL 21648118 (Neb.App. July 15, 2003) (not designated for permanent publication).
The instant appeal is traced to January 12, 2005, when Kathleen filed an application for modification requesting custody of the parties' minor children. In an order signed on July 6, 2007, and file stamped on July 9 (July 9 order), the trial court dismissed such application and assessed an attorney fee of $10,000 against Kathleen. Next, on September 14, 2007, the trial judge signed an order denominated as "ORDER (VISITATION TIME)." This order made a finding that "exhibit 63 [John's proposed parenting plan] shall be the parenting plan" and provided that "the court requests that the parties submit the parenting plan which conforms to this order within 14 days of the date of this order." The "ORDER (VISITATION TIME)" was file stamped by the clerk of the court on September 17 (September 17 order).
The September 17 order provided in its final paragraph as follows: "This Order is incorporated into the Court's Order of July 6, 2007 [July 9 order], and the combined Orders shall become a final Order for purposes of appeal effective 14 days from the date of this Order. DATED this 14 day of September, 2007."
There were no motions filed to toll the time in which to appeal. Kathleen filed her notice of appeal on November 1, 2007, and on April 4, 2008, John moved to dismiss the appeal arguing that this court lacked jurisdiction because the appeal was not timely and properly perfected. On May 7, we overruled the motion to dismiss without prejudice to our further consideration of such after completion of briefing and examination of the bill of exceptions. The parties have now completed briefing, and we have the bill of exceptions. We have entered an order dispensing with oral argument pursuant to our authority under Neb. Ct. R.App. P. § 2-111(B)(1).

FACTUAL BACKGROUND
The factual background of this protracted custody dispute is extensively detailed in our two previous opinions referenced above, and the reader is referred to those opinions. Additional facts and evidence will be detailed as necessary in the analysis section of our opinion.

PROCEDURAL BACKGROUND REGARDING JURISDICTION
Kathleen's application for modification filed January 12, 2005, was tried before the district court for Douglas County, Nebraska, on May 2, 3, and 9, 2007. Initially, we turn to the argument and discussion among the trial judge and counsel at the *175 close of the trial on May 9. At the end of that discussion, after the court asked counsel if there was "anything else," Kathleen's lawyer mentioned the subject of a parenting plan and the court immediately stated: "I'll incorporate that." However, additional discussion followed, and it was agreed that while the matter of the application for modification was under submission, counsel for the parties would attempt to reach agreement on as many of the visitation, telephone call, and travel issues as they could, bearing in mind that the trial court had not yet decided who would have custody and whether the children would live in Illinois or Nebraska. We note that the application for modification being tried specifically asked for the implementation of "a detailed parenting plan."
Any attempt to agree upon a parenting plan was unsuccessful as evidenced by the bill of exceptions, which begins anew with a hearing on July 6, 2007. At the beginning of the July 6 hearing, the court asked counsel for John: "And I believe this is your hearing, correct?" Counsel answered in the affirmative, stating that "the motion is based on post-closing arguments." We note that the motion referenced by counsel is not in our transcript. However, given the May 9 discussion referenced above and the exchange at the beginning of this July 6 proceeding, it is evident that John's counsel at some point after May 9 filed a motion for the court to adopt a parenting plan. John's counsel explained to the court that the parties were unable to reach complete agreement about a parenting plan "[a]nd so we decided to schedule this hearing today to submit two proposals and then leave it up to the Judge's discretion...." At this point in the proceedings, Kathleen's proposed parenting plan, exhibit 65, was offered and received in evidence as was John's parenting plan, exhibit 63. Then approximately 15 pages of "back and forth" occurred between counsel and the court about the various problems in agreeing on a parenting plan. The trial judge then injected the fact that he had drafted the decision on the motion to modify and that while he had been unsure whether it would be ready for the July 6 hearing, he now had it and would be giving it to the parties. The court then verbally announced that there would be no modification of custody and that the children would remain in Omaha in John's custody. The written order so concludingthe July 9 orderwas signed by the judge on July 6 and file stamped on July 9.
The court stated it would review the competing parenting plans and make a decision, but counsel asked for clarification as to whether the July 9 order "is the final order." The court responded that it "was intended as a final order [but visitation] issues ... remain outstanding" and thus "[the July 9 order] won't be a final order and I'll enter an order to that effect, okay?" Before the hearing was concluded, the trial judge again iterated that he would enter an order "saying this is not a final order andbecause there's still some visitation issues and I'll schedule another hearing in about three weeks, 30 days, I'll let you know when it is and that will keep that from a final order." But no further hearing occurred. Rather, the court entered another orderwhat we have earlier referenced as the September 17 order. This order begins as follows:
THIS MATTER came before the Court on July 6, 2007, on the Court's own motion to determine the terms and conditions of the parenting plan between the parties. Counsel for both parties appeared. The Court previously entered its Order on Plaintiff's Application to Modify on July 6, 2007, but the Court left unresolved the issue of the parenting plan, and, thus, that Order was not a final Order for purposes of appeal. The *176 Court ordered the parties to try to resolve the issue of the parenting plan, and, if they could not, this hearing would be held. The parties advised the Court that some, but not all, issues have been resolved.
The court then found that exhibit 63, which it described as John's proposed parenting plan, "shall be the parenting plan, with the addition ... that [John] is awarded the legal and physical custody of the minor children." The September 17 order then provided:
The Court requests that the parties submit the parenting plan which conforms to this Order within 14 days of the date of this Order.
This Order is incorporated into the Court's Order of July 6, 2007, and the combined Orders shall become a final Order for purposes of appeal effective 14 days from the date of this Order.
DATED this 14 day of September, 2007.
On October 3, 2007, a document entitled "Parenting Plan" was file stamped by the clerk of the district court, and on the previous day, underneath the words "BY THE COURT," the trial judge had signed the same. This 14-page document states that it is "made and entered into between Kathleen ... and John." On November 1, Kathleen filed her notice of appeal, stating that she was appealing from the order entered on October 2.

JURISDICTIONAL ANALYSIS
[1-3] It is the duty of an appellate court to settle jurisdictional issues presented by a case. A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law. State v. Cisneros, 14 Neb. App. 112, 704 N.W.2d 550 (2005). This court, on its own motion, may examine and determine whether jurisdiction is lacking as the result of a defect which prevents acquisition of appellate jurisdiction. Hammond v. Hammond, 3 Neb.App. 536, 529 N.W.2d 542 (1995). Although the procedural history leading to the jurisdictional issues certainly is complex, there are no disputes of fact.
[4] There is no more fundamental jurisdictional precept than the doctrine that appeals can only be taken from final orders. See In re Interest of Anthony R. et al., 264 Neb. 699, 651 N.W.2d 231 (2002) (for appellate court to acquire jurisdiction of appeal, there must be final order entered by court from which appeal is taken; conversely, appellate court is without jurisdiction to entertain appeals from nonfinal orders).

Kathleen's Appeal From Attorney Fee Assessment.
[5] Kathleen's first assignment of error is that the trial court erred in assessing $10,000 against her for John's counsel. This award is found in the July 9 order, but Kathleen's notice of appeal was not filed until November 1, 2007, nearly 90 days thereafter. The notice of appeal was filed well outside the 30-day timeframe for appealing to this court set forth in Neb. Rev.Stat. § 25-1912(1) (Cum.Supp.2006). If the July 9 order was a final order, the appeal of the assessment of attorney fees is obviously out of time.
[6] On the basis of Huffman v. Huffman, 236 Neb. 101, 459 N.W.2d 215 (1990), we find that the July 9 order was not a final, appealable order. Huffman holds as follows:
Generally, when multiple issues are presented to a trial court for simultaneous disposition in the same proceeding and the court decides some of the issues, while reserving some issue or issues for later determination, the court's determination *177 of less than all the issues is an interlocutory order and is not a final order for the purpose of an appeal.
236 Neb. at 105, 459 N.W.2d at 219.
The Supreme Court explained and applied this rule as follows:
In the present case, there was a solitary pleading, the application for modification of a dissolution decree. The application requested that the dissolution decree be modified to grant child custody to Bruce Huffman and that a schedule of visitation rights be determined for the noncustodial parent. The tenor of the modification application may be expressed in the alternative: a change in custody or, if such change were denied, a new schedule of visitation rights. Thus, Bruce Huffman's application was a solitary pleading which raised multiple issues, namely, custody and visitation of children, which were determinable in one proceeding regarding modification of a prior dissolution decree. Therefore, we hold that when an application is filed to modify a decree in a marital dissolution action, and the modification application pertains to more than one issue involving children affected by the dissolution decree, a court's resolution of one issue raised by the modification application, but retention or reservation of jurisdiction for disposition of another issue or other issues raised by the modification application, does not constitute a final judgment, order, or decree for the purpose of an appeal. For that reason, this court has jurisdiction to review the district court's action on Bruce Huffman's modification application.
Id. at 106, 459 N.W.2d at 220.
[7] In the instant case, while the July 9 order did not specifically reserve the matter of the parenting plan for future decision, the order itself did not decide the matter, and the court expressly reserved such for future determination in the discussions on the record. Accordingly, we find that Huffman, supra, is controlling and that the July 9 order was not a final order because the matter of the parenting plan was unresolved and reserved for future action. See, also, Lewis v. Craig, 236 Neb. 602, 463 N.W.2d 318 (1990) (when substantial rights of parties to action remain undetermined and cause is retained for further action, order is not final).

Can Trial Court Extend Time to Appeal Its July 9 Order Assessing Attorney Fees?
[8, 9] The September 17 order said that it was "incorporated" into the earlier July 9 order and that "the combined Orders shall become a final Order for purposes of appeal effective 14 days from the date of this Order." In short, the trial court attempted to determine the appeal time by tacking on an extra 14 days in which to appeal. This is outside of the authority and power of the courtsand that has long been the applicable law. Morrill County v. Bliss, 125 Neb. 97, 249 N.W. 98 (1933) (trial court has no inherent power, directly or indirectly, to extend time for taking appeal). The trial's court attempted 14-day extension of the time in which to appeal was error as a matter of law and is of no force and effect on the question of whether this court has appellate jurisdiction. We vacate that portion of the district court's September 17 order.

Kathleen's Attempted Appeal Regarding Parenting Plan.
[10] Kathleen's second assignment of error concerns three disagreements that she has with the parenting plan, and again we face a jurisdictional issue. The trial court's September 17 order "finds that Exhibit 63 will be the parenting plan" with the addition of the court's earlier determination that John would have legal and *178 physical custody of the children. The court's order then said, "The Court requests that the parties submit the parenting plan which conforms to this Order within 14 days of the date of this Order." On October 2, 2007, the trial judge signed a document entitled "Parenting Plan" which was then filed stamped by the clerk of the district court on October 3. The notice of appeal filed November 1 is obviously out of time from the September 17 order, given our holding above that the trial court cannot extend the time in which to appeal. Thus, unless the parenting plan file stamped October 3 is the final, appealable order, which incidentally would encompass the July 9 order containing the attorney fee award about which Kathleen complains in her first assignment of error, the notice of appeal filed November 1 is out of time.
We make a number of observations about exhibit 63 and the parenting plan file stamped October 3, 2007, having compared the contents of the two documents. They are virtually identical, as one would expect, given that the September 17 order makes exhibit 63 the operative parenting plan. The only changes are as follows: (1) the addition of a sentence providing that John is the custodial parent, which is merely reflective of both the July 9 order and the September 17 order, and (2) in several places what was "his/her" in exhibit 63 is changed to a definite "his" or "her" in accordance with the fact that John would be the custodial parent. Therefore, the October 3 parenting plan is merely a memorialization of what was decided in the September 17 order. Additionally, the October 3 parenting plan recites that it is a parenting plan "made and entered into" between John and Kathleen, and the document contains no order of the court that the parties do anything. It short, it is the agreement of the two parties as to how they will parent the children, which just happens to have the judge's signature and the clerk's date stamp. Thus, while the parties had the court decide between competing parenting plans, the fact is that the operative decision was made in the September 17 order, when the court designated exhibit 63 as the parenting plan. We assume for purposes of discussion that a trial court's choice of competing parenting plans affects a parent's substantial right and is thus appealable. However, the decision about the operative plan was made in the court's September 17 order. Granted, the September 17 order requested later submission of the actual parenting plan selected by the trial court; however, in our view, that request does not mean that the September 17 order was not a final, appealable order.
A similar situation was presented in City of Ashland v. Ashland Salvage, 271 Neb. 362, 711 N.W.2d 861 (2006). The City of Ashland brought a declaratory judgment action against appellants Ashland Salvage, Inc., and Arlo Remmen, "seeking a declaration as to the existence and lawful boundaries of certain public rights-of-way claimed by the city and further seeking an injunction against appellants' improper use of the public rights-of-way." Id. at 363, 711 N.W.2d at 864. Following a trial, in a file-stamped journal entry dated November 22, 2004, the district court ruled in favor of the city in the declaratory judgment action, "declaring the boundaries of appellants' property and the existence of the city's public rights-of-way. Specifically, in its journal entry, the district court stated that `a public right-of-way exists and its legal boundaries are as set forth in Exhibit 14.'" Id. at 365, 711 N.W.2d at 866. Further, in the journal entry, the district court "`enjoined [appellants] from any use of [the disputed] property inconsistent with its use as a public right-of-way.'" Id. The journal entry also "directed *179 the city to prepare an `injunction,' and an `Order of Permanent Injunction' was subsequently filed on December 6." Id. at 365-66, 711 N.W.2d at 866. On November 30, the appellants filed their notice of appeal from the adverse ruling, and the Nebraska Supreme Court considered whether appellate jurisdiction existed in the case or whether notice of appeal was premature. The Nebraska Supreme Court concluded:
[T]he district court's file-stamped journal entry of November 22, 2004, found in favor of the city, declared the boundaries of the rights-of-way, and enjoined appellants from any use of the disputed property inconsistent with the city's rights-of-way. This ruling resolved all issues raised in the city's declaratory action. Although the November 22 journal entry also directed the city to prepare an injunction, the November 22 ruling nevertheless disposed of the whole merits of the case....
Id. at 367, 711 N.W.2d at 867. The Supreme Court therefore determined that because the November 22 journal entry disposed of all the claims, the appeal taken from the November 22 journal entry was timely.
We have great difficulty in distinguishing the present case from City of Ashland, supra, which we think we would have to do to find that the instant appeal was timely. In the September 17 order, the trial court selected the operative parenting plan, exhibit 63. And the directive of the trial court to submit such to the court, incorporating the fact the John would be the custodial parent, seems to us to be indistinguishable from the directive to "prepare an injunction" in City of Ashland, supra. We do note that the document states on the first page, "The Mother and the Father wish to have this Plan and the terms and conditions contained herein approved by the Court and incorporated by the Court in the Decree of Dissolution to be entered in this case." But the decree was not modified to include the parenting plan, and although the judge's signature can be seen as "approval," the court's decision as to which plan would control, and the terms thereof, was made in the September 17 order, not by the filing of October 3, 2007.
Additionally, two other cases need to be mentioned. In Hosack v. Hosack, 267 Neb. 934, 678 N.W.2d 746 (2004), the district court signed and filed a journal entry which indicated that the court had considered all matters properly before it and set forth its findings thereupon. However, that document in Hosack contained a provision that counsel should "`advise the court ... if the court failed to rule on any material issue presented.'" 267 Neb. at 936, 678 N.W.2d at 750. The journal entry also specified that counsel was to "`prepare the decree and provide it to [opposing counsel] for review [and then present it] to the Court for signature.'" Id. Counsel prepared a decree in conformance with the journal entry, the court signed the decree, it was file stamped, and an appeal was taken.
The Supreme Court in Hosack, supra, determined that the journal entry did not finally determine the rights of the parties because it directed the parties to advise the court if any material issues were not resolved and because it "contemplated that the decree was to be prepared" by counsel for opposing counsel's review and for later court signature and filing. Id. at 939, 678 N.W.2d at 752. Thus, the Supreme Court concluded that the journal entry "was not the final determination of the rights of the parties in [the] action." Id. at 939-40, 678 N.W.2d at 752. As such, the appeal from the actual decree, prepared in accordance with the directions of *180 the journal entry filed by the court, was timely.
From our perspective, the present case seems dissimilar from Hosack, supra, because here the parties were not to submit an agreed-upon decree as in Hosack, but, rather, a "plan" that conformed to a specified exhibit, and no issue submitted to the court remained to be resolved via the later submission. Furthermore, the preparing party was not required to submit the plan for opposing counsel's review and for later court signaturealthough the court did sign the parties' plan.
Finally, in our jurisdictional discussion, we come to the recent decision of Wagner v. Wagner, 275 Neb. 693, 749 N.W.2d 137 (2008), in which the court once again addressed the recurring problem of signed and file-stamped letters by trial judges deciding cases and directing counsel to prepare a decree. In Wagner v. Wagner, 16 Neb.App. 328, 743 N.W.2d 782 (2008), we found that such a letter from the trial judge had started the running of the time in which to appeal, and thus the appeal was out of time. Upon further review, the Supreme Court found that the letter was not a final judgment, apparently for two very different reasons: First, the letter did not find that the marriage was irretrievably broken and order it dissolved, and second, the letter directed counsel to prepare a decree and submit it to opposing counsel for approval, and then to the court. Although the Supreme Court's opinion suggests that the first reason alone would be enough to prevent the letter from being a final, appealable order, the court left no doubt that the second reason prevented the letter from operating as a final, appealable order. With respect to this second reason, the court said:
Here, the court's direction to counsel to prepare a final decree, and submit that decree for approval to opposing counsel and then the court, clearly indicates that the letter was not intended to be the court's final adjudication of the rights and liabilities of the parties. As in Hosack, the court's preliminary findings contemplated that the decree was to be prepared for opposing counsel's review and were not the final determination of the rights of the parties.
275 Neb. at 700, 749 N.W.2d at 142-43.
Therefore, the question for us, after the Supreme Court's decision in Wagner, is whether the direction from the trial judge in its September 17 order for the parties to "submit" the plan, which the court had decided would be exhibit 63, delays the beginning of the time in which to appeal until the plan is submitted. And we quote from Wagner, supra, "But just as important is the fact that, as in Hosack, the trial court's letter was written only in contemplation of a decree to be entered later." 275 Neb. at 699, 749 N.W.2d at 142. But here, there were no preconditions set forth in the September 17 order before exhibit 63 would be operative, such as approval by one or both counsel or signature by the court. Rather, the trial court merely requested the submission of the plan, and the court could have simply been contemplating the submission of a plan signed only by Kathleen and John evidencing the plan, or not signed by either of them because the September 17 order contains nothing by which it can be said that such order was entered "in contemplation of a decree" or some other further action by the court. And it seems to us that a key component of the delayed final order doctrine from Wagner, supra, is the trial court's contemplation that a decree will be later entered, but we can find no such evidence of such an intent in the present case.
We conclude that the request to submit the plan to the court did not prevent the *181 September 17 order from being the final, appealable order because in contrast to Wagner v. Wagner, 275 Neb. 693, 749 N.W.2d 137 (2008), and Hosack v. Hosack, 267 Neb. 934, 678 N.W.2d 746 (2004), the directive did not require signature or approval by counsel or signature by the court in order for exhibit 63 to be the operative parenting plan. And equally important, the September 17 order left nothing unresolved. In short, the effectiveness of exhibit 63 was not made contingent upon further action by the court and counsel of the nature found crucial in Wagner and Hosack. Finally, we are unable to distinguish the directive in City of Ashland v. Ashland Salvage, 271 Neb. 362, 711 N.W.2d 861 (2006), to prepare an injunction from the directive in this case to "submit the plan."
Therefore, for these reasons, any appeal had to be taken within 30 days of the September 17 order, which, incidentally, was when the July 9 order on attorney fees, which Kathleen seeks to address in her first assignment of error, also became final. Therefore, we lack jurisdiction over Kathleen's appeal.

CONCLUSION
While Nebraska jurisprudence on the subject of appellate jurisdiction and final, appealable orders is undoubtedly difficult for a pro se litigant such as Kathleen to navigate, the trial court's procedure and orders made the jurisdictional shoals rockier than usual. That said, Kathleen's appeal was filed out of time as explained above, and thus, we dismiss her appeal. We also vacate that portion of the September 17 order attempting to extend the time in which to appeal.
ORDER VACATED IN PART, AND APPEAL DISMISSED.