we have quoted above has not disabused the Department of the notion that it is free to disregard a court order with which it disagrees. So we add our own admonition: In the seemingly unlikely event that the circumstances presented here should arise in the future, the Department, OJS, and the YRTC can, and indeed must, comply with the juvenile court's order, and it is their statutory duty to provide appropriate treatment to a juvenile committed to their care and custody unless and until an appellate court reverses or modifies the commitment order. Statutory interpretation and construction is a function of the judicial branch, not the executive branch.

Based upon the manner in which these cases became moot, and the distinct possibility that the issue presented is one of last impression, we decline to reach the merits of these appeals under the public interest exception to the doctrine of mootness.

## CONCLUSION

For the foregoing reasons, we lack appellate jurisdiction over these appeals because the issue presented is moot. Accordingly, the appeals are dismissed.

APPEALS DISMISSED.

HEAVICAN, C.J., not participating.

———————————

CURTIS CHARLES HUSKEY, APPELLANT AND CROSS-APPELLEE, V.
DEITRA MARIE HUSKEY, NOW KNOWN AS DEITRA MARIE
OSTERFOSS, APPELLEE AND CROSS-APPELLANT.

___ N.W.2d ___

Filed November 7, 2014.    No. S-13-1140.

1. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court's determination.
2. **Jurisdiction: Appeal and Error.** It is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.
3. **Constitutional Law: Jurisdiction: Appeal and Error.** Except in those cases wherein original jurisdiction is specially conferred by Neb. Const. art. V, § 2, the Nebraska Supreme Court exercises appellate jurisdiction, and such appellate jurisdiction can be conferred only in the manner provided by statute.
4. **Appeal and Error.** The right of appeal in Nebraska is purely statutory.

5. **Judgments: Words and Phrases.** A judgment is the final determination of the rights of the parties in an action.

6. \_\_\_\_: \_\_\_\_. Every direction of a court or judge, made or entered in writing and not included in a judgment, is an order.

7. **Jurisdiction: Final Orders: Appeal and Error.** In the absence of a judgment or order finally disposing of a case, an appellate court has no authority or jurisdiction to act, and in the absence of such judgment or order, the appeal will be dismissed.

8. **Actions: Parties.** Neb. Rev. Stat. § 25-1315(1) (Reissue 2008) is implicated only where multiple causes of action are presented or multiple parties are involved.

9. **Child Custody: Armed Forces: Legislature: Intent: Final Orders.** Because a court may dispense only temporary relief pursuant to Neb. Rev. Stat. § 43-2929.01(4)(a) (Cum. Supp. 2012), the Legislature did not intend for a truly temporary order entered under that subsection to be characterized as a final order under Neb. Rev. Stat. § 25-1902 (Reissue 2008).

10. **Final Orders: Words and Phrases: Appeal and Error.** A substantial right is an essential legal right, not a mere technical right. A substantial right is affected if the order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to an appellant prior to the order from which an appeal is taken.

11. **Constitutional Law: Appeal and Error.** Generally, a constitutional issue not passed upon by the trial court is not appropriate for consideration on appeal.

12. **Final Orders: Appeal and Error.** When multiple issues are presented to a trial court for simultaneous disposition in the same proceeding and the court decides some of the issues, while reserving other issues for later determination, the court's determination of less than all the issues is an interlocutory order and is not a final order for the purpose of an appeal.

Appeal from the District Court for Douglas County: J Russell Derr, Judge. Appeal dismissed.

Vanessa J. Gorden and Abigail F. Littrell, of Gorden Law, L.L.C., and Megan McDowell, Senior Certified Law Student, for appellant.

Kelly T. Shattuck, of Vacanti Shattuck, for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Cassel, J.

## INTRODUCTION

A recently enacted statute[1] affords procedural protections in cases involving child custody and parenting time to military

---

[1] Neb. Rev. Stat. § 43-2929.01 (Cum. Supp. 2012).

parents affected by mobilization or deployment.[2] Pursuant to one provision,[3] the district court permitted the children of a military mother to temporarily accompany her for the duration of her assignment to Fort Benning, Georgia. The nonmilitary father appeals. The statutory language persuades us that the Legislature did not intend for truly temporary orders legitimately falling within the scope of this specific provision to be subject to appellate review. We therefore dismiss the appeal for lack of jurisdiction.

## BACKGROUND

### DIVORCE

In March 2011, a decree was entered dissolving the marriage of Deitra Marie Osterfoss, who was then known as Deitra Marie Huskey, and Curtis Charles Huskey. Osterfoss was awarded sole legal and physical custody of the parties' two children. Huskey was granted parenting time and ordered to pay child support in the amount of $600 per month.

Osterfoss joined the U.S. Army Reserve shortly after the parties' divorce. On March 26, 2013, the Department of the Army sent Osterfoss orders requiring her to report to Fort Benning on August 17 for active duty for a period of 1 year, ending August 16, 2014.

### PLEADINGS FOR MODIFICATION

On July 2, 2013, Osterfoss filed a "Complaint for Modification," alleging that her assignment to Fort Benning constituted a material change in circumstances. She requested that the district court modify the parties' divorce decree and parenting plan for the 2013-14 school year and enter an order permitting her to temporarily relocate the parties' children to Georgia. In support of her request, she asserted that it would not be in the children's best interests to remain in Nebraska with Huskey, because he was in "an unstable relationship with his girlfriend and must move."

---

[2] See Committee Statement, L.B. 673, Judiciary Committee, 102d Leg., 1st Sess. (Feb. 3, 2011).

[3] § 43-2929.01(4)(a).

In response to Osterfoss' complaint, Huskey filed an "Answer and Counter Complaint to Modify," in which he protested relocation of the children for any length of time that would impact his parenting time or the children's education. He further contended that remaining in Nebraska was in the children's best interests, because he would be able to exercise parenting time, the children would be able to continue their education in the Gretna Public Schools system, the children would have the support of extended family members, and relocation of the children would result in their removal from Nebraska for a minimum of 1 year. He therefore requested that the district court award him temporary primary custody during Osterfoss' assignment to Georgia, permanently modify custody to joint legal and physical custody, and order child support.

## Motions for Temporary
## or Expedited Relief

Osterfoss moved the district court for temporary orders and/or an expedited trial. In her motion, she clarified that she was not seeking to permanently relocate the children to Georgia, but sought only a temporary order. The court overruled Osterfoss' motion and granted Huskey temporary custody. The court further suspended Huskey's child support obligation while the children were in his possession and ordered Osterfoss to pay child support.

## Trial

Trial began on December 5, 2013. The district court first conducted an in camera interview of the parties' children. The parties' 12-year-old daughter testified that she wanted to go to Georgia with Osterfoss. The parties' 6-year-old son similarly testified that he desired to be with Osterfoss.

Huskey testified that he was currently living with his girlfriend and their 13-month-old daughter in Waverly, Nebraska. The parties' children had been living with him since the middle of August 2013 pursuant to the grant of temporary custody. Huskey described that he and the children had become "a lot closer." And his employment as a sergeant for the

Lancaster County Department of Corrections permitted him to pick up the children from school every day. However, Huskey explained that because he and his girlfriend were both required to work nights, his mother usually stayed overnight with the children two or three times a week and would take the children to school the following morning.

As to Osterfoss' allegation that Huskey and his girlfriend had an unstable relationship, Huskey testified that his relationship with his girlfriend was secure. He further explained that any discussion of a future move was for the purpose of being closer to Gretna, Nebraska, in order to minimize travel time to the children's school.

Huskey agreed that he and Osterfoss had generally "gotten along" and been able to cooperate with respect to the children's best interests. As to her parenting of the children, Huskey stated that he had "some issues," but that "for the most part, [Osterfoss] did a good job" and that he considered her to be a good parent. He further confirmed that both he and Osterfoss possessed good relationships with the children and indicated that the children missed Osterfoss.

However, Huskey described that Osterfoss had frustrated his parenting time "[v]ery early on" and that he had filed contempt proceedings against her. But he testified that he and Osterfoss had "gotten over that." He also confirmed that he did not believe Osterfoss would frustrate his parenting time if she was permitted to relocate the children to Georgia.

As to his concern for the children's welfare, Huskey testified that he believed the parties' daughter would have problems adjusting to life in Georgia. He explained that their daughter is shy, reserved, and slower at making friends. However, Huskey expressed that the parties' son would adjust because he is "pretty good at adjusting."

Osterfoss testified that she believed the children would benefit from relocating to Georgia. She explained that the children would receive educational benefits because the schools in Georgia have greater diversity. And relocating would permit the children to remain with her, which would provide them continuity, because she had been their primary care provider since their birth. She further confirmed that she

did not believe the children would suffer physically, emotionally, or developmentally if they relocated to Georgia. She testified that the children are resilient and would benefit from the experience.

Osterfoss also expressed concern as to Huskey's care of the children. She explained that she would be able to spend time with the children every day after work, but that Huskey was required to leave the children in the care of others. She also claimed that she was required to purchase a cell phone for the parties' daughter because Huskey was not permitting Osterfoss to speak with her.

A portion of Osterfoss' testimony also concerned Huskey's child support obligation under the divorce decree. On cross-examination, Huskey's counsel asked her, "You've requested in your response to the counterclaim that child support change permanently, is that correct, the amount that . . . Huskey pays to you?" Osterfoss responded affirmatively. Osterfoss testified that Huskey's hourly wage at the time of the parties' divorce was $16. However, Huskey testified that at the time of trial, his hourly wage had increased to approximately $23 per hour.

### District Court's Order

At the conclusion of trial, the district court made an oral pronouncement that the children would be permitted to relocate to Georgia with Osterfoss for the remainder of her temporary assignment. Osterfoss' counsel then inquired as to how child support would be treated, asking, "[A]re we assuming we're going back, then . . . to the old order as far as child support then?" The court responded, "Right."

The district court entered a written order on December 17, 2013, sustaining Osterfoss' motion for temporary removal. In its order, the court observed that it construed Osterfoss' complaint as a request for temporary removal pursuant to § 43-2929.01. And it further noted that, in this case, § 43-2929.01 placed the burden of proof on Huskey, the party seeking to prevent the removal. It therefore determined that Huskey had the burden of proving that a change in custody was in the children's best interests by clear and convincing evidence and that he had

failed to meet that burden. Consequently, the court declined to modify custody. But its order provided that the children were to be returned to Nebraska no later than August 16, 2014. The court's order did not address Huskey's countercomplaint, which apparently is still pending.

## APPEAL

Huskey filed a timely notice of appeal, and the case was assigned to the docket of the Nebraska Court of Appeals. Osterfoss cross-appealed. Huskey filed a petition in this court to bypass the Court of Appeals, and Osterfoss filed a motion for summary dismissal, alleging a lack of appellate jurisdiction. Osterfoss also filed a motion for attorney fees incurred in association with the appeal. We granted Huskey's petition to bypass and overruled Osterfoss' motion for summary dismissal. However, we ordered the parties to further brief the issue of appellate jurisdiction. After briefing was completed, we heard oral arguments.

## ASSIGNMENTS OF ERROR

Huskey assigns, reworded, that the district court erred in (1) interpreting § 43-2929.01 as requiring that Osterfoss maintain physical custody of the parties' children unless a custody change was demonstrated to be in the children's best interests by clear and convincing evidence; (2) applying § 43-2929.01 in a manner that violated his right to equal protection under Neb. Const. art. I, § 3; and (3) finding that temporary removal of the children to Georgia was in the children's best interests.

In her cross-appeal, Osterfoss assigns that the district court erred in failing to modify Huskey's child support obligation.

## STANDARD OF REVIEW

[1] Statutory interpretation presents a question of law, which we review independently of the lower court's determination.[4]

## ANALYSIS

[2] Before we are able to address the merits of the parties' assignments of error, we must determine whether this

---

[4] *Watkins v. Watkins*, 285 Neb. 693, 829 N.W.2d 643 (2013).

court has jurisdiction. It is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[5] In her motion for summary dismissal, Osterfoss alleged that the district court's December 17, 2013, order was not a final, appealable order. She therefore asserted that this court is without jurisdiction over the appeal. We focus our attention on that order.

The order implemented § 43-2929.01(4)(a). Because the question of appellate jurisdiction in this appeal focuses on a relatively new and unexplored statute, we set forth the full text of § 43-2929.01:

> (1) The Legislature finds that for children of military parents it is in the best interests of the child to maintain the parent-child bond during the military parent's mobilization or deployment.
>
> (2) In a custody or parenting time, visitation, or other access proceeding or modification involving a military parent, the court shall consider and provide, if appropriate:
>
> (a) Orders for communication between the military parent and his or her child during any mobilization or deployment of greater than thirty days. Such communication may be by electronic or other available means, including webcam, Internet, or telephone; and
>
> (b) Parenting time, visitation, or other access orders that ensure liberal access between the military parent and the child during any military leave of the military parent during a mobilization or deployment of greater than thirty days.
>
> (3) A military parent's military membership, mobilization, deployment, absence, relocation, or failure to comply with custody, parenting time, visitation, or other access orders because of military duty shall not, by itself, be sufficient to justify an order or modification of an order involving custody, parenting time, visitation, or other access.
>
> (4) *If a custody, child support, or parenting time, visitation, or other access proceeding, or modification*

⁵ *In re Interest of Thomas M.*, 282 Neb. 316, 803 N.W.2d 46 (2011).

*thereof, involves a military parent and is filed after the military parent's unit has received notice of potential deployment or during the time the military parent is mobilized or deployed:*

*(a) The court shall not issue a custody order or modify any previous custody order that changes custody as it existed on the day prior to the military parent's unit receiving notice of potential deployment, except that the court may issue a temporary custody order or temporary modification if there is clear and convincing evidence that the custody change is in the best interests of the child*;

(b) The court shall not issue a child support order or modify any previous child support order that changes child support as it existed on the day prior to the military parent's unit receiving notice of potential deployment, except that the court may issue a temporary child support order or temporary modification if there is clear and convincing evidence that the order or modification is required to meet the child support guidelines established pursuant to section 42-364.16; and

(c) The court shall not issue a parenting time, visitation, or other access order or modify any previous order that changes parenting time, visitation, or other access as it existed on the day prior to the military parent's unit receiving notice of potential deployment, except that the court may enter a temporary parenting time, visitation, or other access order or modify any such existing order to permit liberal parenting time, visitation, or other access during any military leave of the military parent.

(5) If a temporary order is issued under subsection (4) of this section, upon the military parent returning from mobilization or deployment, either parent may file a motion requesting a rehearing or reinstatement of a prior order. The court shall rehear the matter if the temporary order was the initial order in the proceeding and shall make a new determination regarding the proceeding. The court shall reinstate the original order if the temporary order was a modification unless the court finds that the

best interests of the child or the child support guide-
lines established pursuant to section 42-364.16 require a
new determination.

(6) Upon finding an (a) unreasonable failure of a non-
military parent to accommodate the military leave sched-
ule of the military parent, (b) unreasonable delay by the
nonmilitary parent of custody, child support, parenting
time, visitation, or other access proceedings, (c) unreason-
able failure of the military parent to notify the nonmilitary
parent or court of release from mobilization, or (d) unrea-
sonable failure of the military parent to provide requested
documentation, the court may order the offending party to
pay any attorney's fees of the other party incurred due to
such unreasonable action.

(7) This section does not apply to permanent change of
station moves by a military parent.

(Emphasis supplied.) The plain language of this statute shows
that it contemplates various orders, some temporary and some
final. Before addressing the specific jurisdictional issue involv-
ing § 43-2929.01(4)(a), we recall some basic principles of
appellate jurisdiction.

[3,4] Except in those cases wherein original jurisdiction is
specially conferred by Neb. Const. art. V, § 2, the Nebraska
Supreme Court exercises appellate jurisdiction, and such appel-
late jurisdiction can be conferred only in the manner provided
by statute.[6] Thus, in order for this court to have jurisdiction
over an appeal, appellate jurisdiction must be specifically pro-
vided by the Legislature. The right of appeal in this state is
purely statutory.[7]

[5-7] Neb. Rev. Stat. § 25-1911 (Reissue 2008) authorizes
appellate jurisdiction over a judgment rendered or a final order.
Of course, a "judgment" is the "final determination of the
rights of the parties in an action."[8] In the case before us, the
"judgment" was the March 2011 divorce decree. Conversely,

---

[6] *Waite v. City of Omaha*, 263 Neb. 589, 641 N.W.2d 351 (2002).

[7] See *From v. Sutton*, 156 Neb. 411, 56 N.W.2d 441 (1953).

[8] Neb. Rev. Stat. § 25-1301(1) (Reissue 2008).

every direction of a court or judge, made or entered in writing and not included in a judgment, is an order.[9] In the absence of a judgment or order finally disposing of a case, the Supreme Court has no authority or jurisdiction to act, and in the absence of such judgment or order, the appeal will be dismissed.[10]

[8] Apart from the existence of a final judgment, the two statutes primarily relevant to the issue of appellate jurisdiction are Neb. Rev. Stat. §§ 25-1315(1) and 25-1902 (Reissue 2008).[11] Section 25-1315(1), however, is implicated only where multiple causes of action are presented or multiple parties are involved.[12] Because the order before us does not have either of those characteristics, we focus on § 25-1902.

Section 25-1902 defines the three types of final orders that may be reviewed on appeal: (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made upon summary application in an action after a judgment is rendered.

We have observed that an order modifying custody arises from a special proceeding, falling within the second category of § 25-1902.[13] However, it has been noted that an order modifying custody may be similarly classified under the third category of that section: an order affecting a substantial right made upon summary application in an action after a judgment is rendered.[14] But to constitute a final order under either category, the order must affect a substantial right.[15]

Turning to the specific statutory provision before us, we observe that in enacting § 43-2929.01, the Legislature intended to provide protection for military parents in the midst of

---

[9] Neb. Rev. Stat. § 25-914 (Reissue 2008).

[10] *Lewis v. Craig*, 236 Neb. 602, 463 N.W.2d 318 (1990).

[11] See *Waite, supra* note 6.

[12] See, *id.*; § 25-1315(1).

[13] See *Carmicheal v. Rollins*, 280 Neb. 59, 783 N.W.2d 763 (2010).

[14] See *id.* (Connolly, J., concurring in part, and in part dissenting).

[15] See, *id.*; § 25-1902.

mobilization or deployment with respect to custody, child support, parenting time, and related matters. In particular, § 43-2929.01(4) prohibits a court from undertaking several actions when a military parent's unit has received notice of potential deployment or the military parent has been mobilized or deployed: A court may not issue or modify a custody order, child support order, or parenting time, visitation, or other access order that changes custody, child support, or parenting time, visitation, or other access as it existed on the day prior to the military parent's unit receiving notice of potential deployment. However, if no such order is in existence or the modification of an existing order is shown to be warranted, a court may issue a temporary order or temporary modification.

The Legislature made clear that any relief to be afforded under § 43-2929.01(4)(a) should be strictly temporary. First, the Legislature expressly designated the permitted orders as "temporary." Thus, in plain language, the Legislature characterized these orders as "temporary" rather than "final." Second, § 43-2929.01(5) provides that upon the return of the military parent from mobilization or deployment, either parent may request a rehearing or reinstatement of a prior order. If the temporary order was the initial order, the court is required to rehear the matter and make a new determination. And if the temporary order was a modification, the court is required to reinstate the original order unless the best interests of the child or child support guidelines require otherwise.

[9] Because a court may dispense only temporary relief pursuant to § 43-2929.01(4)(a), we conclude that the Legislature did not intend for a truly temporary order entered under that subsection to be characterized as a "final order" under § 25-1902. An order entered pursuant to § 43-2929.01(4)(a) does not finally determine the rights of the parties, because further court action is contemplated once the military parent returns from mobilization or deployment.[16] And a truly temporary order under that subsection does not affect a substantial right.

---

[16] See, § 43-2929.01(5); *Dorshorst v. Dorshorst*, 174 Neb. 886, 120 N.W.2d 32 (1963); *Buda v. Humble*, 2 Neb. App. 872, 517 N.W.2d 622 (1994).

[10] We have previously held that a temporary order affecting custody does not affect a substantial right. We have described a substantial right as an essential legal right, not a mere technical right.[17] A substantial right is affected if the order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to an appellant prior to the order from which an appeal is taken.[18]

In *Steven S. v. Mary S.*,[19] we determined that an order making a temporary custody determination and suspending the mother's right to visitation did not affect a substantial right. Our conclusion was based upon two factors: (1) The order disturbed the mother's relationship with her children for only a brief period of time, and (2) the order was not a permanent disposition.[20]

In *Carmicheal v. Rollins*,[21] we reinforced the principle that an order affecting custody only temporarily does not affect a substantial right. In that case, we observed that the temporary grant of custody to the father during the mother's military deployment period of 400 days was not a final order.[22] We noted that the grant of custody to the father was temporary and that custody would revert to the mother upon her return from active duty.[23]

The order before us did not affect a substantial right. It did not make a permanent disposition. Pursuant to § 43-2929.01(5), the order contemplated further action by the court upon Osterfoss' return. And it affected the custody arrangement of the parties only temporarily. It permitted Osterfoss to relocate the children only from December 25, 2013, to August 16, 2014—a period of less than 8 months. While we concede that 8 months is not an insignificant period of time, we have

---

[17] See *Steven S. v. Mary S.*, 277 Neb. 124, 760 N.W.2d 28 (2009).

[18] *Id.*

[19] See *id.*

[20] See *id.*

[21] See *Carmicheal*, *supra* note 13.

[22] See *id.*

[23] See *id.*

already determined that an order granting temporary custody for a period of 400 days did not affect a substantial right.[24] Further, we view the object of the order before us as less obtrusive. In contrast to *Steven S.* and *Carmicheal*, the order before us provided for continuity of custody by maintaining the custody arrangement of the parties as it existed before Osterfoss received her orders and filed her complaint. It disrupted only Huskey's right to parenting time. And Huskey's parenting time was not substantially reduced under the order. The order was truly a temporary order within the meaning of § 43-2929.01(4)(a).

Because the order was properly characterized as a "temporary" order under § 43-2929.01(4)(a), and because it did not affect a substantial right, we conclude that it was not a "final order" under § 25-1902. We are therefore without a statutory basis to exercise jurisdiction over the parties' appeal.

However, in holding that the order before us is not subject to appeal, we acknowledge the danger that a court might enter a final order disguised as a temporary order under § 43-2929.01(4)(a), that successive temporary orders could be employed in an attempt to evade appellate review, or that a temporary order might persist for such a duration that it would affect a substantial right and constitute a final order despite its label as "temporary." We are not suggesting that under any of those circumstances, a purportedly temporary order would evade appellate review.

[11] And we do not pass upon the constitutionality of § 43-2929.01. We lack jurisdiction to do so. But even if we had jurisdiction, we would not reach Huskey's constitutional claim. Although Huskey challenges the statute's constitutionality in his assignments of error, he failed to raise any constitutional issue before the district court. Generally, a constitutional issue not passed upon by the trial court is not appropriate for consideration on appeal.[25] Because he failed to raise the issue before the trial court, we would not reach it in this appeal even if we had jurisdiction.

---

[24] See *id*.

[25] *Lindner v. Kindig*, 285 Neb. 386, 826 N.W.2d 868 (2013).

[12] We further note that Huskey's countercomplaint for a permanent modification of custody is apparently still pending before the district court. The order before us made no mention of Huskey's countercomplaint. Although the court may have considered itself constrained by § 43-2929.01 from permanently modifying custody, it should have addressed the issue if only to make it clear that the pleading had not been adjudicated. When multiple issues are presented to a trial court for simultaneous disposition in the same proceeding and the court decides some of the issues, while reserving other issues for later determination, the court's determination of less than all the issues is an interlocutory order and is not a final order for the purpose of an appeal.[26]

Because the appeal was taken from an order that was not final, we must dismiss the appeal for lack of jurisdiction. And we are therefore without power to grant Osterfoss' motion for attorney fees. We overrule the motion for attorney fees without prejudice to the reassertion of the request before the district court.

## CONCLUSION

We conclude that the Legislature did not intend for appellate review of truly temporary orders entered pursuant to § 43-2929.01(4)(a). That subsection is limited to temporary relief, and orders which do not finally determine the rights of the parties or affect a substantial right are not final orders as defined by § 25-1902. Without a statutory basis to exercise jurisdiction, we must dismiss the appeal.

APPEAL DISMISSED.

---

[26] *Wagner v. Wagner*, 275 Neb. 693, 749 N.W.2d 137 (2008).