CYNTHIA J. CLABORN, APPELLEE, V.
BILLY E. CLABORN, APPELLANT.
673 N.W.2d 533

Filed January 9, 2004.   No. S-02-1069.

Brent M. Kuhn, of Harris Kuhn Law Firm, L.L.P., for appellant.

Mark D. Kratina, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Billy E. Claborn appeals from a dissolution decree entered in July 2002, claiming that the district court erred in its division of property, award of alimony, calculation of child support, and division of medical and dental expenses not covered by insurance. We determine that the district court erred in its division of property and award of alimony. We affirm as modified.

## BACKGROUND

Cynthia J. Claborn and Billy were married in 1980. In May 2001, Cynthia filed a petition for dissolution of marriage. At trial, the parties stipulated that Cynthia would be awarded custody of the two minor children. Two children who had reached the age of majority also resided with Cynthia. Cynthia testified that she would like to continue to live in the home purchased during the marriage until the youngest child graduated from high school. That child will reach the age of majority on September 16, 2004.

At the time of trial, Cynthia was 42 years old. She was employed by Avaya, Inc., and had worked there for about 23 years. At the end of 2000, her monthly gross income was $2,575, and she estimated her total monthly expenses at $4,046. This estimate included the mortgage payment on the house and food for adult children still living there. At the time of trial, she had been on paid medical leave for about 5 months because of depression, anxiety, and stress. Although the leave was paid, she was unable to work and collect compensation for overtime. However, she anticipated that she would return to work in 1 or 2 months.

Billy was employed at Jackson Home Appliance, his father's family business, as an office manager. At the end of 2000, his monthly gross income was $4,250. The record indicates that in the past, Billy would sometimes make additional money working odd jobs, but he was working only at Jackson Home Appliance at the time of trial. The record also shows that before Cynthia filed for dissolution, Billy was working about 80 hours per week.

In May 2001, Billy entered a treatment facility for alcohol and chemical dependency. When he returned, he worked 40 hours per week, cutting his income about in half. He testified that he needed a break because of the stress that he was under and that he was not mentally capable of earning more money. He also stated that when he went into treatment, sales of used appliances "fizzled out," and that this cut the need for him to perform some duties related to delivering used appliances.

Billy's father testified that he initially was going to fire Billy when the dissolution action was filed, but instead, he reduced Billy's duties and wages because he did not think Billy was capable any more. He stated that Billy's hours and pay were not cut as a way to reduce Billy's child support obligations.

Both parties provided information about items of property and joint debts. The record shows that Cynthia has a retirement annuity with no present value but that it might have value when she is 65. She also has a retirement savings account of $8,759.52. Cynthia testified about medical expenses she paid that were not covered by insurance. The evidence showed that Billy obtained proceeds from the sale of a motorcycle, but he claims he used the money to pay other obligations. There was also evidence that Cynthia incurred debt for some uninsured

medical bills before trial and paid some joint debt. However, the motorcycle proceeds, the joint debts Cynthia claimed to have paid, and debts for medical bills were not addressed by the court and are not included in the decree.

The parties stipulated that the family residence had a value of $185,000, with a first mortgage of $117,000 and a second mortgage of $22,500. The proceeds from the second mortgage were used to purchase Billy's one-third interest in the rental property. They further stipulated that the rental property was worth $275,000, in which property Billy had a one-third interest. The rental property was encumbered with mortgages of $141,000. Cynthia claimed Billy's monthly gross income was $4,250, but Billy claimed it was approximately $2,166.

The district court calculated Billy's child support obligation based on an income of $3,807. The court also ordered that uncovered medical and dental expenses be shared equally by the parties. The court awarded alimony of $1,000 per month until the youngest child reaches the age of majority. At that time, the alimony would be reduced to $750 for 36 months and then reduced to $500 for another 36 months. The court awarded the residence to Cynthia, subject to the $117,000 first mortgage. The court awarded Billy his one-third interest in the rental properties, subject to mortgages of $141,000. The court ordered Billy to pay the $22,500 second mortgage on the residence. The court awarded Cynthia the retirement annuity plan. The court ordered Cynthia to pay $9,940 of remaining joint debts, plus the $117,000 first mortgage on the home. The court ordered Billy to pay $31,200 in debts, which included the $22,500 second mortgage. The court divided other personal property, including awarding a boat to Billy that the parties state is worth either $6,000 or $8,000; the record supports the value of $6,000.

## ASSIGNMENTS OF ERROR

Billy assigns, rephrased, that the district court erred in how it allocated assets. Specifically, he assigns that the court erred in (1) determining the division of property, (2) failing to include the retirement annuity plan in marital property, (3) awarding alimony, (4) calculating child support based on his previous

earning capacity, and (5) ordering him to pay one-half of the first $1,200 of uninsured medical and dental expenses.

## STANDARD OF REVIEW

Appeals in domestic relations matters are heard de novo on the record, and thus, an appellate court is empowered to enter the order which should have been made as reflected by the record. *Foster v. Foster*, 266 Neb. 32, 662 N.W.2d 191 (2003).

The standard of review of an appellate court in child support cases is de novo on the record, and the decision of the trial court will be affirmed in the absence of an abuse of discretion. *Henderson v. Henderson*, 264 Neb. 916, 653 N.W.2d 226 (2002).

## ANALYSIS

### PROPERTY DIVISION AND CYNTHIA'S RETIREMENT PLANS

Billy first contends that the property award was inequitable. Both parties included charts in their briefs to show the court's property division but disagree about the property values and the allocation of debts. For example, they disagree over the value of a boat, whether certain debts were included, and whether proceeds from a motorcycle sale were included. The following is an explanation of the district court's award:

**CYNTHIA**

Assets

| | | |
|---|---|---|
| Home Equity: | | $68,000 |
| Value | $185,000 | |
| First mortgage | ( 117,000) | |
| Retirement plan | | 8,759 |
| | | |
| Debts | | ( 9,940) |
| Total Equity | | $66,819 |

**BILLY**

Assets

| | | |
|---|---|---|
| Rental properties equity: | | $44,666 |
| (based on one-third interest) | | |
| Value | $275,000 | |
| Mortgages | ( 141,000) | |
| | $134,000 | |
| Bayliner boat | | 6,000 |

Debts
    Second mortgage                    ( 22,500)
    Boat loan                          (  8,700)
Total Equity                           $19,466

■■■ Under Neb. Rev. Stat. § 42-365 (Reissue 1998), the purpose of a property division is to distribute the marital assets equitably between the parties. *Gibilisco v. Gibilisco*, 263 Neb. 27, 637 N.W.2d 898 (2002). In an action for dissolution of marriage, a court may divide property between the parties in accordance with the equities of the situation, irrespective of how legal title is held. *Medlock v. Medlock*, 263 Neb. 666, 642 N.W.2d 113 (2002).

■■■ In dividing property and considering alimony upon a dissolution of marriage, a court should consider four factors: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party. *Schaefer v. Schaefer*, 263 Neb. 785, 642 N.W.2d 792 (2002); *Hajenga v. Hajenga*, 257 Neb. 841, 601 N.W.2d 528 (1999). Although the division of property is not subject to a precise mathematical formula, the general rule is to award a spouse one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. *Gibilisco v. Gibilisco, supra.*

Here, the award of $66,819 of assets to Cynthia and $19,466 to Billy is unreasonable and unfair. Cynthia was awarded over two-thirds of the marital estate, when the record does not support such an unequal distribution of property. The youngest child will reach the age of majority on September 16, 2004, and it would be beneficial for Cynthia to remain in the house until that time. But we determine that to fairly divide the property, the house should be sold after September 16, 2004, and the two mortgages paid off. Billy shall continue to pay the second mortgage until the house is sold. At that time, the second mortgage will be paid in full from the proceeds of the sale.

Billy next argues that the district court erred in its division of Cynthia's retirement savings plan and annuity plan. We have reviewed the record and conclude that the court did not err in how it divided those plans.

Having determined that the house should be sold after September 16, 2004, with the mortgages paid off from the proceeds, and that the retirement plans should be awarded to Cynthia, based on the values in the record, we order the following division of property:

**CYNTHIA**

Assets

| | | |
|---|---|---|
| Home equity: | | $45,500 |
| Value | $185,000 | |
| First mortgage | ( 117,000) | |
| Second mortgage | ( 22,500) | |
| Retirement plan | | 8,759 |
| | | |
| Debts | | ( 9,940) |
| Total Equity | | $44,319 |

**BILLY**

Assets

| | | |
|---|---|---|
| Rental properties equity: | | $44,666 |
| (based on one-third interest) | | |
| Value | $275,000 | |
| Mortgages | ( 141,000) | |
| | $134,000 | |
| Bayliner boat | | 6,000 |
| | | |
| Debts | | |
| Boat loan | | ( 8,700) |
| Total Equity | | $41,966 |

## ALIMONY

Billy contends that the alimony award was unreasonable because Cynthia was employed throughout the marriage.

In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. *Bowers v. Lens*, 264 Neb. 465, 648 N.W.2d 294 (2002). In determining whether alimony should be awarded, in what amount, and over what period of time, the ultimate criterion is one of reasonableness. *Id.*

The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate. Alimony should not be used to equalize the incomes of the parties or to punish one of the parties. *Kalkowski v. Kalkowski*, 258 Neb. 1035, 607 N.W.2d 517 (2000). However, disparity in income or potential income may partially justify an award of alimony. *Bauerle v. Bauerle*, 263 Neb. 881, 644 N.W.2d 128 (2002).

Here, the record shows that Cynthia was employed for the duration of the marriage. At the time of trial, she was taking a paid leave of absence from work because of depression, but intended to return to work. Nothing in the record indicates that Cynthia cannot work or that she requires any training to support herself. Although the record shows that there was some disparity of income during a period of the marriage, the record also shows that Billy was having difficulties continuing to work over 40 hours per week.

Because Cynthia was experiencing depression which did not allow her to earn extra income in the form of overtime, we agree that an award of alimony through September 2004 was appropriate. After that time, however, the record does not support an alimony award. We determine that the district court's award of alimony past September 2004 was unreasonable and untenable. Thus, we reverse that part of the award. The alimony as awarded by the district court should be paid through September 2004 and then end.

## CHILD SUPPORT

Billy argues that the court erred when it calculated child support based on his earning capacity instead of his current income.

The paramount concern and question in determining child support, whether in the initial marital dissolution action or in the proceedings for modification of decree, is the best interests of the child. *Gase v. Gase*, 266 Neb. 975, 671 N.W.2d 223 (2003). In general, child support payments should be set according to the Nebraska Child Support Guidelines, which compute the presumptive share of each parent's child support obligation. *Wagner v. Wagner*, 262 Neb. 924, 636 N.W.2d 879 (2001).

Under the Nebraska Child Support Guidelines, paragraph D, if applicable, earning capacity may be considered in lieu

of a parent's actual, present income and may include factors such as work history, education, occupational skills, and job opportunities. *Id.* A divorce decree does not require a parent to remain in the same employment, and child support may be calculated based on actual income when a career change is made in good faith. *Id.* But child support may be based on a parent's earning capacity when a parent voluntarily leaves employment and a reduction in that parent's support obligation would seriously impair the needs of the children. *Id.* We have also said that earning capacity may be used as a basis for an initial determination of child support under the Nebraska Child Support Guidelines where evidence is presented that the parent is capable of realizing such capacity through reasonable effort. *Brockman v. Brockman,* 264 Neb. 106, 646 N.W.2d 594 (2002).

Here, there was testimony that Billy reduced his work hours for treatment purposes and because he was unable to work additional hours. There also, however, was an inference that he sought to continue reduced work hours to lower his child support obligations. We note that the district court used an income amount that was in between the amounts requested by the parties. We also note that the court had the opportunity to see and hear the witnesses, and was in a better position to judge what Billy's earning capacity was. We conclude that the court did not abuse its discretion when setting the amount of child support.

### MEDICAL EXPENSES

Finally, Billy argues that it was improper to require him to pay one-half of any necessary medical and dental expenses not covered by insurance because the child support guidelines already include the first $1,200 of those expenses in the calculation.

The child support guidelines were amended in September 2002 to state that the guidelines include ordinary medical expenses. Before September 2002, however, we held that it was permissible for a court to order the noncustodial spouse to share payment for unreimbursed medical expenses. See *Druba v. Druba,* 238 Neb. 279, 470 N.W.2d 176 (1991).

Here, the decree was entered in July 2002, which is before the change in the guidelines. We apply the law that was in effect at that time and decline to overrule cases allowing courts to order payment of unreimbursed medical expenses before September

2002. Accordingly, the district court did not err when it ordered Billy to pay one-half of unreimbursed medical expenses.

CONCLUSION

We determine that the district court erred in its division of property and award of alimony and modify those parts of the decree. We affirm on all other issues.

AFFIRMED AS MODIFIED.

McCORMACK, J., not participating.