JUDY LOUISE HOSACK, APPELLEE, V.
MAX GALEN HOSACK, APPELLANT.
678 N.W.2d 746

Filed May 7, 2004.   No. S-02-1405.

Paul M. Conley for appellant.

James H. Hoppe and Timothy W. Curtis for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

In a petition for further review, Max Galen Hosack asserted that the Nebraska Court of Appeals erred in finding that it lacked jurisdiction to review a judgment of the Saunders County District Court. We granted Max's petition for further review.

## SCOPE OF REVIEW

■ Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Cerny v. Longley*, 266 Neb. 26, 661 N.W.2d 696 (2003).

■ In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Gibilisco v. Gibilisco*, 263 Neb. 27, 637 N.W.2d 898 (2002).

■ A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Gase v. Gase*, 266 Neb. 975, 671 N.W.2d 223 (2003).

## FACTS

On February 12, 2002, Judy Louise Hosack filed a petition for dissolution of her marriage to Max. On October 15, the district court signed and the clerk of the district court filed a journal entry which stated:

> Having considered all matters properly before it, the court now finds, concludes and rules as follows:

1. **Dissolution.** The marriage between the parties is irretrievably broken and the dissolution sought herein should be granted.

2. **Property Division.** The parties have reached a division of the marital estate and have divided their property in accordance with that division agreement. The court approves the property settlement . . . .

3. **Retirement Funds.** Each of the parties has a retirement account . . . . The court finds that each party is entitled to one half of the retirement of the other . . . . The court requires that counsel provide a QDRO [qualified domestic relations order] to be made a part of the decree to be drafted herein.

8. **Alimony.** . . .

. . . .

In this case, the parties have been married for 31 years. [Judy] is presently in her mid-fifties and worked at various times throughout the marriage, but mostly at minimum wage employment. . . . During the marriage, she raised the couple's three children. There is a significant disparity in the earning capacity of the parties.

. . . [Max] should pay alimony to [Judy] until she reaches age 62 in the monthly amount of $575.00.

9. **Miscellaneous Matters.** 1) [Judy] can retrieve her belongings from [Max's home] by giving him at least 48 hours telephone notice. 2) [Max] shall continue health insurance coverage for [Judy] for 6 months after the entry of the decree. 3) [Judy] is awarded $750.00 towards [sic] her attorney's fees, to be paid by [Max] no later than December 30, 2002.

10. **Motion.** Counsel shall advise the court, by written motion, if the court failed to rule on any material issue presented. If no motion is filed within 10 days from the date of this order, all matters not specifically ruled upon are deemed denied.

11. **Decree.** [Judy's counsel] shall prepare the decree and provide it to [Max's counsel] for review no later than October 31, 2002. The decree shall be presented to the Court for signature no later than November 15, 2002.

A decree was signed by the district court on November 14, 2002, and it was filed by the clerk of the district court. The decree provided that Max was awarded the residence in Exeter, Nebraska, subject to any liens and encumbrances thereon. It stated that the court approved the division of property, finding it fair, reasonable, and not unconscionable. Each party was awarded that property currently in his or her possession, including any vehicles subject to existing liens. Each party was directed to pay any debts in his or her individual name and to hold the other harmless for the payment thereof. Fifty percent of Judy's retirement benefits at Square D and 50 percent of Max's retirement benefits at Kawasaki were awarded to each party. The court retained jurisdiction to enter any necessary qualified domestic relations orders to effectuate the division of the retirement benefits of the parties. The decree awarded Judy attorney fees of $750 to be paid by Max no later than December 30. It directed that Max pay alimony to Judy in the amount of $575 per month commencing on November 1, 2002, and terminating when Judy reaches the age of 62. The decree also stated that alimony would terminate upon the death of either party or Judy's remarriage. Max was directed to maintain Judy on his health insurance program through Kawasaki for 6 months from and after the date of the court's decree. The decree also stated: "To the extent there is any conflict between this Decree and any attachment or other document incorporated herein by reference, the language of this Decree shall supersede and control." Max filed his notice of appeal on December 4.

## COURT OF APPEALS' DECISION

Before the Court of Appeals, Max assigned the following restated errors: The district court erred (1) in considering retirement plan benefits as assets separate from the marital estate for purposes of equitable distribution; (2) in distributing retirement plan benefits without requiring a definitive accounting of their value and considering the relation of that value to the value of the entire marital estate; (3) in accepting as fair and reasonable the parties' division of marital property absent inclusion of the retirement plan benefits; (4) in failing to consider all statutory and judicially mandated factors in determining whether and how

much alimony should be awarded; (5) in failing to consider equitable factors other than disparity of income, which resulted in an alimony award that unfairly deprived Max of a substantial right or just result in a matter submitted for disposition through the judicial system; (6) in awarding alimony against the greater weight of the evidence that the statutory criteria did not support the court's decision; and (7) in awarding alimony where the general equities of the parties did not support the court's decision.

On May 30, 2003, the Court of Appeals dismissed the appeal for lack of jurisdiction pursuant to Neb. Ct. R. of Prac. 7A(2) (rev. 2001). The Court of Appeals found that the October 15, 2002, journal entry was a proper entry of judgment under Neb. Rev. Stat. § 25-1301 (Cum. Supp. 2002) and that the notice of appeal filed on December 4 was not timely. On June 9, Max filed a motion for rehearing, which was overruled by the Court of Appeals on September 3. Max filed a timely petition for further review in this court, and we granted his petition.

PETITION FOR FURTHER REVIEW

In Max's petition for further review, he assigned as error (1) the Court of Appeals' determination that the October 15, 2002, journal entry was intended to be a final determination; (2) the Court of Appeals' conclusion that Max's notice of appeal was untimely filed and that the court lacked jurisdiction to hear the appeal; and (3) the Court of Appeals' conclusion that the October 15 journal entry was not inconsistent with the decree dated November 14, which contained further findings and orders.

ANALYSIS

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Cerny v. Longley*, 266 Neb. 26, 661 N.W.2d 696 (2003). The Court of Appeals dismissed this appeal for lack of jurisdiction on the basis that the notice of appeal was not timely filed. Thus, the first question we must consider is whether this court has jurisdiction.

Section 25-1301 provides in part: "(1) A judgment is the final determination of the rights of the parties in an action." Therefore, we must determine in accordance with § 25-1301 which action by the district court finally determined the rights of the parties:

the journal entry filed on October 15, 2002, or the decree filed on November 14.

The Court of Appeals relied, in part, on *Federal Land Bank v. McElhose*, 222 Neb. 448, 384 N.W.2d 295 (1986), in which the trial court announced its decision on December 4, 1984. At that time, the trial court found that the mortgagors were in default on a note and mortgage and that the bank had a first lien on the land described in the petition, except for one 80-acre parcel of land. The decision was typed in the court's trial docket on that date. On January 25, 1985, a more formal statement of the decision, entitled "Decree," was signed by the trial court. This second decision conformed to the earlier decision in all respects except that it did not exclude the parcel of land excluded in the first decision.

This court concluded that the December 1984 pronouncement and docket entry finally determined the rights of the parties and constituted the rendition of a decree and that the signing and filing of the more formal statement of the court's decision also constituted the rendition of a decree. However, the second decree contradicted the first decree in part. We held:

> Under such a circumstance the notice of appeal was timely with respect to that portion of the January decree which contradicted the December decree but untimely with respect to those portions of the January decree which confirmed the earlier decree. Thus, we have jurisdiction with respect to the [appellants'] first assignment of error, which deals with that portion of the second decree which contradicts the first decree, but not with respect to the second assignment of error, which deals with those portions of the first and second decrees which are consistent with each other.

*Id.* at 451, 384 N.W.2d at 298.

In the case at bar, the journal entry filed on October 15, 2002, left certain matters unresolved. Via the journal entry, counsel was directed to advise the district court by written motion if the court had failed to rule on any material issue presented. If no motion was filed within 10 days, then all matters not specifically ruled upon were to be deemed denied. The journal entry contemplated that the decree was to be prepared for opposing counsel's review by October 31 and for signature no later than November 15. We conclude that the journal entry was not the final determination of

the rights of the parties in this action. See § 25-1301. Thus, the Court of Appeals erred when it found that the journal entry was a proper entry of judgment and dismissed the appeal for lack of jurisdiction.

We take this opportunity to disapprove of the practice of a trial court's filing a journal entry which describes an order that is to be entered at a subsequent date. As we noted in *McElhose*, 222 Neb. at 452, 384 N.W.2d at 298, "the confusion presented by this case can be avoided if trial courts will, as they should, limit themselves to entering but one final determination of the rights of the parties in a case." The filing of both a journal entry and a subsequent order creates the potential for confusion. Instead, the trial court should notify the parties of its findings and intentions as to the matter before the court by an appropriate method of communication without filing a journal entry. The trial court may thereby direct the prevailing party to prepare an order subject to approval as to form by the opposing party. See commentary to Canon 3(B)(7) of the Nebraska Code of Judicial Conduct. Only the signed final order should be filed with the clerk of the court.

In this case, the journal entry of October 15, 2002, was not a final order which would start the time for filing a notice of appeal. Thus, the Court of Appeals erred in dismissing the appeal for lack of jurisdiction, and its decision is reversed.

▪ Upon granting further review which results in the reversal of a decision of the Court of Appeals, this court may consider, as it deems appropriate, some or all of the assignments of error the Court of Appeals did not reach. *DeBose v. State, ante* p. 116, 672 N.W.2d 426 (2003). We therefore consider whether the district court abused its discretion in its division of retirement plan benefits and in its order requiring Max to pay alimony.

### Retirement Plan Benefits

Max asserts on appeal that the district court should not have considered the parties' retirement plan benefits to be assets separate from the marital estate. He claims the court erred (1) by distributing the benefits without requiring a definitive accounting of their value and considering the relation of that value to the entire marital estate and (2) by accepting the division of property as fair and reasonable absent inclusion of the retirement plan benefits.

■ In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Gibilisco v. Gibilisco*, 263 Neb. 27, 637 N.W.2d 898 (2002). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Gase v. Gase*, 266 Neb. 975, 671 N.W.2d 223 (2003). In dissolution actions, district courts have broad discretion in valuing pension rights and dividing such rights between the parties. *Tyma v. Tyma*, 263 Neb. 873, 644 N.W.2d 139 (2002).

In this case, the journal entry noted that each party had a retirement account and that although the present value of the accounts was not adduced at trial, it appeared that Judy's monthly retirement payment would be minimal. In the decree, the district court awarded each party half of the other party's retirement plan benefits.

At trial, Max testified that he had been employed at Kawasaki for 27 years and that he earned approximately $20 per hour. He stated that he did not know the amount of retirement plan benefits he had accumulated, but that all of the benefits had been accumulated during the marriage. Max agreed that an equal division would occur if he received half of Judy's retirement plan benefits and she received half of his benefits.

■ We have held that although Neb. Rev. Stat. § 42-366(8) (Reissue 1998) requires that any pension plans, retirement plans, annuities, and other deferred compensation benefits owned by either party be included as part of the marital estate, the plain language of the statute does not require that such assets be valued at the time of dissolution. The expression "at the time of dissolution" in § 42-366(8) qualifies the date at which the marital estate is divided but does not provide that pension-type property must be valued on such date. *Tyma v. Tyma, supra.*

■ The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *Tyma v. Tyma, supra.* Max has not provided any support for his argument that the division of

the retirement plan benefits was unfair or unreasonable. The marriage was of long duration, as the parties were married more than 30 years. During the marriage, Judy was primarily responsible for raising the parties' three children. All of Max's retirement plan benefits were earned during the marriage. Thus, we find that the district court did not abuse its discretion in dividing the retirement plan benefits.

## ALIMONY

Max objects to the alimony award of $575 per month that he was ordered to pay to Judy. In dividing property and considering alimony upon a dissolution of marriage, a court should consider four factors: (1) the circumstances of the parties, (2) the duration of the marriage, (3) the history of contributions to the marriage, and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of each party. *Claborn v. Claborn, ante* p. 201, 673 N.W.2d 533 (2004). Disparity in income or potential income may partially justify an award of alimony. *Id.*

The district court found a significant disparity in the earning capacity of the parties. The court noted that Judy was currently in her mid-50's and had worked at various times throughout the marriage, usually at minimum wage jobs. Although she was able to work at the time of the dissolution, it was likely to be at minimum wage. Our de novo review of the record shows that Judy, a high school graduate, was employed throughout most of the marriage and that the maximum amount she had earned was $7.50 per hour.

In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. *Id.* In determining whether alimony should be awarded, in what amount, and over what period of time, the ultimate criterion is one of reasonableness. *Id.* The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate. *Id.* As to the award of alimony, the district court did not abuse its discretion.

## CONCLUSION

For the reasons set forth herein, we reverse the decision of the Court of Appeals and remand the cause with directions that the Court of Appeals affirm the judgment of the district court as to the division of the retirement plan benefits and the award of alimony.

REVERSED AND REMANDED WITH DIRECTIONS.