756 N.W.2d 751 (2008)
17 Neb. App. 97
Kimberly K. BANDY, Appellant,
v.
Finis Scott BANDY, Appellee.
No. A-07-1306.
Court of Appeals of Nebraska.
October 14, 2008.
*753 Patrick R. Runge, of Runge Law Office, Omaha, for appellant.
John H. Kellogg, Jr., of Kellogg & Palzer, P.C., Omaha, for appellee.
IRWIN, SIEVERS, and CARLSON, Judges.
IRWIN, Judge.

I. INTRODUCTION
Pursuant to this court's authority under Neb. Ct. R.App. P. § 2-111(B)(1), this case was ordered submitted without oral argument. Kimberly K. Bandy appeals from a decree of dissolution entered by the district court, which decree dissolved her marriage to Finis Scott Bandy, divided the parties' marital assets and debts, awarded Kimberly custody of the parties' minor child, and ordered Finis to pay child support and a nominal amount of alimony. On appeal, Kimberly asserts that the district court erred in finding that Finis' disability pension was not marital property, in ordering her to pay the entirety of a bill from a jewelry store, in not including Finis' earning capacity in its calculations of his monthly income, and in overruling her motion for new trial. For the reasons set forth below, we affirm the decision of the district court.

II. BACKGROUND
Kimberly and Finis were married on May 26, 1984. There were two children born of the marriage. At the time of trial, the older child was 19 years old and the younger child was 15 years old. As such, the older child was not a subject of the proceedings.
During the parties' marriage, Finis' employment required Finis, Kimberly, and *754 their children to move often. Over the years, the parties lived in the eastern U.S. and in San Diego and two smaller cities in California. The family's constant relocation made it difficult for Kimberly to retain employment. While there were times when Kimberly was able to find temporary employment, there were significant points in time when Kimberly was a stay-at-home mother because (1) there was not enough time to obtain a job because of an impending transfer or (2) Kimberly and Finis determined it would make more sense economically for Kimberly to stay home.
In approximately 1999 or 2000, the parties moved to Nebraska. Shortly thereafter, Finis became employed with the city of Omaha in the public works department and Kimberly began working part time for a travel business. In 2003, Finis was injured while on the job. As a result of this injury, Finis was unable to continue with his current employment. He qualified for disability pension benefits through the city of Omaha and workers' compensation benefits. In addition to these benefits, Finis also began receiving disability payments from the Department of Veterans Affairs as a result of a separate injury which occurred during the time he spent in the military. Since his injury in 2003, Finis has sought employment; however, because of his physical limitations, he has found it difficult to find and retain a job.
On January 11, 2006, Kimberly filed a complaint for dissolution of marriage. Kimberly specifically asked that the parties' marriage be dissolved; that she be awarded the care, custody, and control of the younger child; and that the court award her temporary and permanent child support and alimony. On February 17, Finis filed a response to the complaint for dissolution of marriage wherein he asked that the parties be awarded joint custody of the younger child.
On March 16, 2006, the court entered a temporary order. This order is not included in the record; however, there is some evidence that the order awarded temporary custody of the younger child to Kimberly and ordered Finis to pay temporary child support and one-half of the monthly mortgage payments for the parties' home.
On August 1, 2006, a hearing was held. At the hearing, Kimberly presented evidence that Finis owed $2,981.01 in temporary child support arrearages and approximately $2,130 in arrearages on the mortgage payments. Finis testified that he had been looking for a job, but that his injuries hindered his ability to gain employment. He testified that he was "making [his] best efforts" to pay the child support and mortgage payments.
After the hearing, the court found Finis to be in contempt of the temporary order. The court stated, "[A]lthough, obviously, there is not enough money to go around in this case, there isit seems to me that [Finis] could have not only gotten the child support paid on time but paid the extra [$]355 [toward the monthly mortgage payments]." The court went on to suggest that Finis could acquire a part-time job to help pay the debt if he wanted to: "[I]f you really wanted to make this a priority, you could get that taken care of because you have got the arrangement made on the child support now. It is the mortgage."
On August 21, 2007, a trial was held. At the close of the evidence, the court entered a decree of dissolution. The court awarded custody of the younger child to Kimberly, ordered Finis to pay child support in the amount of $621.81 per month, awarded Kimberly $4,000 in attorney fees, and distributed the parties' marital assets and debts. In addition, the court ordered Finis to pay Kimberly a nominal amount of alimony:

*755 [Finis] shall pay ... alimony for the support and maintenance of [Kimberly] in the amount of $1.00 per year, for the next five years. Said payments shall commence upon the first day of October, 2007, and shall continue to be due and payable on the first day of the month thereafter until the final payment on October 01, 2012. If circumstances around [Finis'] income substantially change, [Kimberly] may seek modification.
On September 27, 2007, Kimberly filed a motion for new trial alleging that the trial court erred in (1) finding Finis' pension was in the form of a disability pension and not part of the marital estate, (2) finding Finis' earning capacity outside of his pension checks was equal to $0, (3) awarding Kimberly only $1 per year in alimony, and (4) ordering Kimberly to pay a bill for jewelry purchased by Finis. After a hearing, the court entered an order overruling Kimberly's motion in all respects.
Kimberly appeals here.

III. ASSIGNMENTS OF ERROR
In her appellate brief, Kimberly assigns five errors. She alleges, renumbered and consolidated, that the district court erred in (1) finding that Finis' disability pension was not a marital asset, (2) ordering Kimberly to pay the entirety of a marital debt owed to a jewelry store, (3) not including Finis' earning capacity in a calculation of his income for purposes of child support and alimony, and (4) overruling her motion for new trial.

IV. ANALYSIS

1. STANDARD OF REVIEW
[1] An appellate court's review in an action for dissolution of marriage is de novo on the record to determine whether there has been an abuse of discretion by the trial judge. Gress v. Gress, 271 Neb. 122, 710 N.W.2d 318 (2006). This standard of review applies to the trial court's determinations regarding child support, division of property, and alimony. See id. An abuse of discretion occurs when the trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. Adams v. Adams, 13 Neb.App. 276, 691 N.W.2d 541 (2005).

2. DISTRIBUTION OF MARITAL PROPERTY
Kimberly's first assignments of error allege that the district court erred in distributing the marital assets and debts. Specifically, Kimberly argues that the court erred in finding that Finis' disability pension from the city of Omaha was not marital property and in ordering her to pay a particular debt in its entirety. Upon our review of the record, we cannot say that the court abused its discretion in distributing the marital assets or debts.
[2] Under Neb.Rev.Stat. § 42-365 (Reissue 2004), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. Gress v. Gress, supra. Although the division of property is not subject to a precise mathematical formula, the general rule is to award a spouse one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. Id.

(a) Finis' Disability Pension
[3] Kimberly argues that the district court erred in finding that Finis' disability *756 pension was not a part of the marital estate and in failing to award her a portion of the pension. Kimberly asserts that the disability pension constituted a portion of the retirement benefits Finis earned as a result of his employment with the city of Omaha. She asserts that "because [Finis'] employment was during the marriage of the parties, the benefits of that employment should be subject to a reasonable division by the District Court." Brief for appellant at 14. Upon our review of the record, and considering the equities of the parties' circumstances, we cannot say that the district court abused its discretion in finding that Finis' disability pension was not a part of the marital estate.
Neb.Rev.Stat. § 42-366(8) (Reissue 2004) provides, in part, that "[t]he court shall include as part of the marital estate, for purposes of the division of property at the time of dissolution, any pension plans, retirement plans, annuities, and other deferred compensation benefits owned by either party, whether vested or not vested." The marital estate includes only that portion of pensions or retirement accounts earned during the marriage. See Priest v. Priest, 251 Neb. 76, 554 N.W.2d 792 (1996).
It is clear from the language of § 42-366(8) that retirement benefits, including retirement pension plans, are to be considered as part of the marital estate. Kimberly contends that Finis' disability pension constitutes a retirement benefit. She asserts that evidence in the record demonstrates that the disability pension was actually a "`disability retirement pension.'" Brief for appellant at 12. Finis argues that the pension is a disability pension unrelated to his retirement benefits through the city. In tentative findings made before entry of the decree, the district court found that "the pension [Finis] now receives from the City of Omaha is in the nature of a disability pension," and the court reiterated that finding in the decree.
Upon our de novo review of the record, we do not find that the district court abused its discretion in determining that Finis' pension was a disability pension unrelated to his retirement benefits. The record reveals that after Finis was injured on the job, he applied for a "service-connected disability" benefit. Documentation from the city of Omaha informed Finis that "[a]t age 65, disability pensions convert to service retirement pensions with service credit incurred up to 30 years." (Emphasis omitted.) In addition, the terms of the disability pension require a recipient to "apply for Social Security Disability," and they explain, "Social Security Disability is not the same as old age Social Security." (Emphasis omitted.) (Emphasis in original.) The terms of the disability pension also permit the city to offset disability payments by the amount of any workers' compensation benefit awarded as a result of the disabling injury.
Based on the language contained in documentation from the city of Omaha, it is clear that the city distinguished Finis' disability pension from his retirement benefits. In fact, the Omaha City Code provides that while Finis is receiving payments from his disability pension, his retirement pension is still accruing value. See Omaha Mun. Code § 22-35(a) (2008). The code provides that upon Finis' reaching the age of 65, Finis' period of work credits coupled with his period of disability shall be utilized to determine a retirement pension which will begin at that time. See id.
The majority of the evidence presented at trial established that although Finis' disability benefits were labeled a "pension," the benefits were more analogous to a workers' compensation award than to a retirement benefit in that the disability *757 pension appears to be compensation for Finis' loss of earning power due to a work-related injury, rather than compensation for past services.
Because we affirm the district court's finding that Finis' disability pension was not a retirement benefit, we turn to the question of whether disability payments which are labeled a "disability pension" are to be considered part of the marital estate under the language of § 42-366(8) or current case law.
This court has previously examined whether a "disability pension" should be included in the marital estate. In John v. John, 1 Neb.App. 947, 511 N.W.2d 544 (1993), the plaintiff had applied for and been granted a disability pension through the city of Omaha 15 years prior to the parties' dissolution proceedings. After beginning to receive disability payments, the plaintiff began working at a bank as a personal banking center manager. Id. At trial, the plaintiff did not present any evidence regarding the nature of his disability; nor did he present evidence to demonstrate that his earning capacity had been in any way affected by his disability. Id. As a part of the decree of dissolution, the court awarded the defendant approximately $300 per month of the plaintiff's disability pension. Id.
The defendant appealed to this court and argued, among other things, that the district court erred in not awarding her one-half of the marital estate, including one-half of the defendant's disability pension. Id. On appeal, the plaintiff conceded that the disability pension was a marital asset, but argued that it was deserving of some type of "special treatment." Id. at 951, 511 N.W.2d at 547.
In analyzing whether to include the proceeds from the disability pension in the marital estate, we first analogized disability payments to personal injury claims, which the Nebraska Supreme Court had previously held could be included in the marital estate. See Maricle v. Maricle, 221 Neb. 552, 378 N.W.2d 855 (1985), overruled on other grounds, Parde v. Parde, 258 Neb. 101, 602 N.W.2d 657 (1999). We then determined, "based on the facts as presented by the record, that it [was] proper in [John] to include [the plaintiff's] disability pension in the marital estate." John, 1 Neb.App. at 951-52, 511 N.W.2d at 548. In finding that the plaintiff's disability pension should be included in the marital estate, we noted that there was nothing in the record to reveal the nature of the plaintiff's disability or any effect that this disability had on his ability to earn additional income. Id. However, we stated: "We can imagine situations where in fact a person's earning capacity or medical expenses may be greatly impacted by a disability and result in a different outcome than what we hold in this case." Id. at 952, 511 N.W.2d at 548.
We note that our holding in John could be read to suggest that because disability pensions or disability benefits are analogous to personal injury claims, at least a portion of the benefits should always be included in the marital estate. However, the crux of our decision to include the disability pension in that marital estate was not our determination that the disability pension was akin to a personal injury claim, but our analysis of the relevant facts, circumstances, and resulting equities of the case. In John, the plaintiff conceded that the disability pension should be a part of the marital estate, the plaintiff was able to resume working after being injured, and there was no evidence that the disability had affected his earning capacity whatsoever.
[4] Accordingly, we clarify our holding in John v. John, 1 Neb.App. 947, 511 *758 N.W.2d 544 (1993), to provide that a determination of whether a disability pension or disability benefits should be included in the marital estate should be based on the relevant facts and circumstances of the case at issue.
[5] In the instant case, the evidence at trial revealed that Finis was injured while on the job in 2003. He has been unable to maintain work since that time. It is clear that his disability greatly impacted his ability to earn additional income. Finis testified that he had tried to work at other jobs, but that he was unable to perform the responsibilities associated with the jobs and that he experienced a great deal of pain while working. At the time of trial, Finis' only income was from his disability payments. As such, his disability pension from the city of Omaha, together with his workers' compensation award and his pension from the Department of Veterans Affairs, constituted his entire stream of income. Finis' disability pension is distinct from any retirement benefits he may receive from the city; rather, the pension appears to be compensation for his loss of earning capacity.
A trial court's determination that a former spouse's disability pension should not be included in the marital estate is not an abuse of discretion where the former spouse was unable to work as a result of injuries, his or her only income was from disability payments, and his or her disability pension was distinct from retirement benefits. Based on Finis' inability to earn additional income and the circumstances of the parties, we do not find that the court abused its discretion in failing to include any part of Finis' disability pension in the marital estate. We affirm.

(b) Jewelry Bill
[6] Kimberly also contends that the district court erred in ordering her to pay a bill for jewelry purchased by Finis. Kimberly argues that she is not in possession of all of the jewelry listed on the bill and that as such, "it would be inequitable and unreasonable to require [her] to be responsible" for the debt. Brief for appellant at 19. Upon our review of the record, we do not find that the court abused its discretion in ordering Kimberly to pay the jewelry bill.
At trial, the parties testified that there were two unpaid marital debts. Testimony and exhibits showed the parties owed $1,605.69 to an automobile repair shop for repairs made to a vehicle driven by the parties' older son. The parties also owed approximately $702 to a jewelry store for certain items purchased in May 2005, including earrings, a pendant, and "additional items." In the decree, the court assigned the debt from the automobile repair shop to Finis and assigned the debt from the jewelry store to Kimberly. Specifically, the court stated: "[Finis] shall pay and hold [Kimberly] harmless for the debt to [the automobile repair shop] in the amount of $1,605.89 [sic]. [Kimberly] shall pay and hold [Finis] harmless for $702.00 of the [jewelry store] debt."
In her brief to this court, Kimberly asserts that this division of the parties' debts was inequitable because she did not receive all of the items of jewelry listed on the jewelry store bill. She opines that some of the jewelry was retained by Finis or given to someone else. When questioned by counsel at trial, Kimberly agreed that there were items of jewelry listed on the receipt that she did not receive as a gift from Finis at any point in time. Kimberly did not provide any further testimony regarding which items she had received and which she had not received.
Contrary to Kimberly's testimony, Finis testified that the items listed on the receipt were gifts for Kimberly which were *759 given to her on the last anniversary the parties celebrated together.
In light of the conflicting evidence regarding possession of the jewelry, and viewing the property distribution as a whole, we cannot say the district court abused its discretion in ordering Kimberly to pay the jewelry store debt in its entirety. We find Kimberly's contention to be without merit.

3. CALCULATION OF FINIS' MONTHLY INCOME
[7] In her next assignments of error, Kimberly asserts that the district court erred in calculating Finis' monthly income for the purpose of determining his child support and alimony obligations. Kimberly alleges that the court should have imputed additional income to Finis because, despite Finis' disability, he is capable of working and earning additional income. Kimberly further alleges that at the contempt hearing in August 2006, the court found Finis to be capable of working, and that the court should be bound by that prior determination. Upon our review of the record, we find that the district court did not abuse its discretion in calculating Finis' income using only his monthly disability payments.
At trial, Finis testified that his current income was based entirely on his disability payments. He testified that he receives monthly payments from his disability pension through the city of Omaha, from his disability pension through the Department of Veterans Affairs, and from a workers' compensation award. He estimated that his monthly earnings from these three benefits totaled $2,262. The trial court calculated Finis' monthly income to be $2,291.18, an amount very close to Finis' estimated monthly earnings. The court did not impute any additional income to Finis and noted in a letter to the parties dated September 12, 2007, "[A]t this point in time, [Finis'] only income is disability."
We now examine the court's calculation of Finis' income as it relates to a determination of Finis' child support and alimony obligations.

(a) Child Support
[8-10] In general, child support payments should be set according to the Nebraska Child Support Guidelines, which compute the presumptive share of each parent's child support obligation. Claborn v. Claborn, 267 Neb. 201, 673 N.W.2d 533 (2004). Under the Nebraska Child Support Guidelines,
[i]f applicable, earning capacity may be considered in lieu of a parent's actual, present income and may include factors such as work history, education, occupational skills, and job opportunities. Earning capacity is not limited to wage-earning capacity, but includes moneys available from all sources.
Neb. Ct. R. § 4-204. Child support may be based on a parent's earning capacity when a parent voluntarily leaves employment and a reduction in that parent's support obligation would seriously impair the needs of the children. Claborn, supra. Earning capacity may be used as a basis for an initial determination of child support under the Nebraska Child Support Guidelines where evidence is presented that the parent is capable of realizing such capacity through reasonable effort. Id.
In the instant case, the district court based its calculation of Finis' income solely on Finis' monthly disability payments. The court did not impute any additional income to Finis.
The evidence presented at trial revealed that Finis had worked for the city of Omaha for approximately 3 years when he was injured on the job in 2003. Finis sought treatment for his injuries from various *760 physicians; however, after he reached "maximum medical improvement," he was still limited in his ability to perform certain activities, including his ability to sit or stand for long periods of time and his ability to lift more than 15 pounds. In March 2005, his doctors informed the city that Finis was not "capable of performing all the essential functions" of his previous position. The city later determined that it could not accommodate Finis in any other position based on his medical restrictions and his lack of education and experience in other areas. As a result of the city's inability to accommodate him, Finis filed an application requesting a disability pension through the city. The city approved the application.
The terms of the disability pension do not preclude Finis from obtaining other employment. However, Finis testified at trial that his physical limitations and the amount of pain he experiences do limit his ability to obtain other employment. Finis testified that after being put on disability, he attempted to work at other locations. Finis said that he obtained a job with a foods company in 2005. He testified he remained at the job for only 6 or 7 months because he was incapable of performing all of his duties as a result of his disability. Finis also testified that he worked for another company for approximately 1 month. Finis testified that his current medical condition is "unchangeable" and that he has not been able to find a suitable job in light of his injuries.
In her motion for new trial and in her brief to this court, Kimberly argued that this evidence is insufficient to support the court's implicit finding that Finis is not capable of earning additional income through reasonable efforts. Kimberly bases her argument on the district court's previous findings at the contempt hearing in August 2006. At the hearing, the court found Finis to be in contempt of court as a result of his failure to pay his temporary child support obligation and one-half of the parties' monthly mortgage payments. The court stated:
And it just seems to me if you worked a part-time job for 15 hours a week at $6 an hour, you could pay that [$]355 a month. And it seems to me that as I look at the local job market and I look at what other people have done who are in similar circumstances to you, that if you really wanted to make this a priority, you could get that taken care of....
Kimberly seems to argue that the district court is bound by its previous decision that Finis is "capable of working" and that as such, the court erred in not imputing any additional income to Finis. See brief for appellant at 16. At the hearing on Kimberly's motion for new trial, the district court addressed Kimberly's argument and explained the rationale for finding differently at the contempt hearing than it did at trial: "And as far as earning capacity or ability to work, I think the evidence was somewhat different at trial than it was at previous hearings, and so I am going to overrule the motion for new trial...."
At the contempt hearing, Finis testified that he was looking for suitable employment, that he had enrolled in a vocational rehabilitation program, and that he was making his "best efforts" to keep up with his child support obligation and his part of the mortgage payment. There was no evidence to suggest that Finis was incapable of working at any job as a result of his injury. There was no evidence which demonstrated that Finis had obtained employment, but had to leave that employment because of his inability to complete his routine responsibilities.
In contrast, at trial, Finis testified that his injury prohibited him from working. He testified that he had tried, unsuccessfully, *761 to earn additional income, but that he experienced too much pain to be able to work at jobs for which he was otherwise qualified.
In light of the evidence at trial which demonstrated that Finis could not work because of his disability, we do not find that the court abused its discretion in calculating Finis' income for the purpose of determining his child support obligation. Upon our de novo review of the record, we find sufficient evidence to establish that Finis is not voluntarily choosing to remain unemployed. Rather, the evidence reveals that Finis is currently incapable of finding employment through "reasonable efforts." Accordingly, we affirm the decision of the district court to calculate Finis' income based solely on his monthly disability payments.

(b) Alimony
[11] We next address Kimberly's assertion that the court erred in calculating Finis' income for the purpose of determining his alimony obligation. Kimberly again argues that the district court should have imputed additional income to Finis because he is capable of working despite his disability and that this imputed income should have been considered in determining the amount of alimony awarded to Kimberly.
[12, 13] In awarding alimony, a court should consider, in addition to the specific criteria listed in § 42-365, the income and earning capacity of each party as well as the general equities of each situation. Marcovitz v. Rogers, 267 Neb. 456, 675 N.W.2d 132 (2004). The criteria in § 42-365 include
the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party.
Disparity in income or potential income may partially justify an award of alimony. Hosack v. Hosack, 267 Neb. 934, 678 N.W.2d 746 (2004).
[14-16] In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result. Id. In determining whether alimony should be awarded, in what amount, and over what period of time, the ultimate criterion is one of reasonableness. Id. The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate. Id.
In the instant case, the district court ordered Finis to pay Kimberly alimony in the amount of $1 per year for the next 5 years. In providing Kimberly with a nominal award of alimony, the court stated:
[Kimberly] introduced evidence which would support some award of alimony. The evidence demonstrated that her career has been interrupted numerous times by transfers which occurred due to [Finis'] employment and that, at other times, she stayed at home with the minor children. However, at this point in time, [Finis'] only income is disability.... [I]t would appear that under these circumstances a substantial award of alimony is not warranted. However, there was some evidence that [Finis], since his disability findings, has worked at times and could possibly work in the *762 future. Therefore, the Court orders $1.00 per year in alimony be paid by [Finis] to [Kimberly] for the next five years. If circumstances surrounding [Finis'] income substantially change, [Kimberly] may seek modification.
As we discussed more thoroughly above, evidence at trial established that Finis is currently incapable of working and that his income is made up entirely from his disability benefits. Based on our analysis of the district court's computation of Finis' income and our review of other evidence in the record, including the duration of the parties' marriage, Kimberly's work history, and the contributions each party made to the marriage, we do not find that the court abused its discretion in calculating Finis' income or in awarding Kimberly a nominal amount of alimony for the next 5 years. We affirm.

4. MOTION FOR NEW TRIAL
[17] After the district court filed the decree of dissolution, Kimberly timely filed a motion for new trial in which she alleged the district court erred for the same reasons she argues in her appellate brief to this court. The trial court subsequently overruled Kimberly's motion, and she now alleges such denial constituted an abuse of discretion. A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. Poppe v. Siefker, 274 Neb. 1, 735 N.W.2d 784 (2007). In light of our analysis of Kimberly's other assignments of error, we conclude that the district court did not abuse its discretion in overruling Kimberly's motion for new trial. We find Kimberly's contention to be without merit.

V. CONCLUSION
Upon our de novo review of the record, we find that the district court did not abuse its discretion in determining that Finis' disability pension was not marital property, in ordering Kimberly to pay the jewelry store bill in its entirety, in calculating Finis' monthly income, or in overruling Kimberly's motion for new trial in all respects. Accordingly, we affirm.
AFFIRMED.