IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

GANNON V. GANNON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

TRACY MARIE GANNON, APPELLANT,
V.
JEFFREY NOLAN GANNON, APPELLEE.

Filed February 11, 2014.    No. A-12-1025.

Appeal from the District Court for Hall County: WILLIAM T. WRIGHT, Judge. Affirmed.

John B. McDermott and Mark Porto, of Shamberg, Wolf, McDermott & Depue, for appellant.

Chris A. Johnson, of Conway, Pauley & Johnson, P.C., for appellee.

MOORE, PIRTLE, and BISHOP, Judges.

BISHOP, Judge.

Tracy Marie Gannon appeals from the decree dissolving her marriage to Jeffrey Nolan Gannon, specifically the district court's decision to calculate child support based on Jeffrey's actual earnings, rather than the earning potential reflected by his prior employment as a teacher. Based on actual earnings, child support was ordered at $580 per month, whereas, child support would have been $913 per month if past earning capacity had been used. Because we conclude that the district court did not abuse its discretion, we affirm.

BACKGROUND

Tracy and Jeffrey were married in 2001 and had two children during their marriage. Tracy filed for divorce in July 2011. In August, the district court entered a temporary order granting Tracy custody of the children and ordering Jeffrey to pay child support of $980 per month. At the time, Jeffrey worked as a teacher and coach at a high school.

In October 2011, criminal charges were filed against Jeffrey after Tracy alleged that, without permission, he entered the home in which she lived with the children and that he pushed both her and their daughter. Jeffrey claimed he went to the home in response to a call from his

- 1 -

daughter earlier in the day and entered the home when the door was opened by Tracy because he saw her boyfriend present and did not "feel that was good in front of the two kids who were still asking me when I was going to come home." Although Jeffrey denied Tracy's allegations, he pled guilty to two counts of domestic assault in the third degree as part of a plea agreement.

In August 2012, Jeffrey learned that the Nebraska Department of Education had denied his application to renew his teaching license because of the domestic assault convictions and his alleged failure to report a prior conviction for disturbing the peace that resulted from another interaction with Tracy. After speaking with lawyers, Jeffrey did not appeal the denial of his application to renew his teaching license because the appeal process could be lengthy, he was not guaranteed a teaching position in the event of a successful appeal, and he was excited about the new opportunity of working at a travel agency owned by his parents. Jeffrey's earnings as a travel agent were significantly less than what he had earned as a teacher.

Trial was held in September 2012. The parties agreed to most issues in connection with the divorce, and the only issue tried before the court was the amount of Jeffrey's child support obligation. Tracy's position was that child support should be based on Jeffrey's earning potential as evidenced by what he had earned as a teacher because he should not benefit from a lower child support obligation that was the result of his own wrongdoing. Jeffrey argued that child support should be based on his actual earnings as a travel agent because he had lost his teaching license and therefore could not obtain employment as a teacher. The district court determined that in order to use Jeffrey's earning capacity, "there must be some evidence that the parent is capable of realizing such capacity through a reasonable effort," and that "Jeffrey's earning capacity is presently significantly reduced." The district court used Jeffrey's actual earnings as a travel agent to determine his child support obligation and set support at $580 per month. Tracy appeals.

## ASSIGNMENT OF ERROR

Tracy assigns that the district court erred when it failed to base Jeffrey's child support obligation on the income he formerly earned as a teacher.

## STANDARD OF REVIEW

An appellate court reviews child support cases de novo on the record and will affirm the trial court's decision in the absence of an abuse of discretion. *State on behalf of A.E. v. Buckhalter*, 273 Neb. 443, 730 N.W.2d 340 (2007). A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Rutherford v. Rutherford*, 277 Neb. 301, 761 N.W.2d 922 (2009). In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions on the matters at issue. When the evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013).

ANALYSIS

Tracy argues that the district court abused its discretion in basing Jeffrey's child support obligation on his actual income as a travel agent, rather than on his earning capacity as a teacher. Tracy "concedes that Jeffrey's current earning capacity was substantially lowered as a result of his criminal convictions," brief for appellant at 10, and Tracy "acknowledges the logic in equating the present circumstances with that of a person who suffers a reduction in income due to a period of criminal incarceration," *id.* at 9, referring to *State v. Porter*, 259 Neb. 366, 610 N.W.2d 23 (2000), which was relied upon by the trial judge in this case. However, Tracy argues that *Porter* is distinguishable from this case because the obligor parent in *Porter* was already incarcerated when the petition to determine child support was filed. In contrast, Tracy says, Jeffrey lost his teaching license months after Tracy petitioned for child support and had already obtained a temporary order. Tracy claims that the present case is more akin to a modification case, since Jeffrey was already under a temporary child support order based on his teaching income, and that at the time of trial, he was in essence seeking to reduce an existing obligation.

Tracy encourages reliance on modification cases because Nebraska courts have often concluded in such cases that a reduction in child support is not warranted when that parent's financial position diminishes due to his or her own voluntary wastage or dissipation of his or her talents and assets and a reduction in child support would seriously impair the needs of the children. See, *Incontro v. Jacobs*, 277 Neb. 275, 761 N.W.2d 551 (2009); *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994); *Schulze v. Schulze*, 238 Neb. 81, 469 N.W.2d 139 (1991); *Grahovac v. Grahovac*, 12 Neb. App. 585, 680 N.W.2d 616 (2004). Tracy argues that this rule should be applied to this case.

The trial court distinguished modification cases from initial actions, but goes on to state, "In either situation, however, the question of whether the reduction in means was 'voluntary', in the sense that it was not brought about by willful actions not in good faith, would still appear to be in issue." The district court likened the present case to the situation in which a person suffered a reduction in income because of criminal incarceration that was not directly related to his or her employment, citing *Porter, supra*.

In *Porter, supra*, the State petitioned for a decree determining paternity and child support. In the father's answer, he admitted paternity but denied he was capable of providing child support because he was incarcerated for assault. Following trial on the matter, the district court ordered the father to pay child support based on the earning capacity he had demonstrated prior to his incarceration. The Nebraska Supreme Court reversed.

The *Porter* court concluded that "when earning capacity is used as a basis for an initial determination of child support under the Nebraska Child Support Guidelines, there must be some evidence that the parent is capable of realizing such capacity through reasonable effort." 259 Neb. at 374, 610 N.W.2d at 29. The Supreme Court recognized that it had approved the use of earning capacity instead of actual earnings in an initial determination under the child support guidelines, where there was evidence that the parent had the present ability to achieve his or her earning capacity. See, e.g., *Knippelmier v. Knippelmier*, 238 Neb. 428, 470 N.W.2d 798 (1991). The *Porter* court noted that the father had no "'actual present income'" due to his incarceration. 259 Neb. at 372, 610 N.W.2d at 28. It rejected the mother's argument that, because the father

had chosen to commit the crime which resulted in his incarceration, he should not be excused from imputation of income consistent with his preincarceration earnings history. The Supreme Court observed that this argument ignored the fact that so long as the father was incarcerated, it was impossible for him to realize his previous income.

We also point out that our appellate courts have considered cases appealed from initial proceedings in which the obligor's income was reduced from the commencement of the action to the time of final order, and in which incarceration was not at issue. In *Claborn v. Claborn*, 267 Neb. 201, 673 N.W.2d 533 (2004), the Nebraska Supreme Court addressed a husband's reduced income in an appeal from an initial dissolution proceeding. In that case, prior to the divorce being filed, the husband had been working about 80 hours per week. When the divorce action was filed by the wife, the husband entered a treatment facility for alcohol and chemical dependency. He subsequently cut his work back to 40 hours per week; this resulted in reducing his income by half. The husband claimed "that he needed a break because of the stress that he was under and that he was not mentally capable of earning more money." *Id*. at 203, 673 N.W.2d at 537. The Supreme Court stated that earning capacity may be considered in lieu of actual, present income, but that "[a] divorce decree does not require a parent to remain in the same employment, and child support may be calculated based on actual income when a career change is made in good faith." *Id*. at 209, 673 N.W.2d at 540-41. The Supreme Court also noted, however, that "child support may be based on a parent's earning capacity when a parent voluntarily leaves employment and a reduction in that parent's support obligation would seriously impair the needs of the children" and that "earning capacity may be used as a basis for an initial determination of child support under the Nebraska Child Support Guidelines where evidence is presented that the parent is capable of realizing such capacity through reasonable effort." *Id*. at 209, 673 N.W.2d at 541. The Supreme Court observed that there was evidence the husband reduced his work hours for treatment and was not able to work the additional hours, but that there was also evidence the husband may have reduced his work hours to lower his child support obligation. The Supreme Court concluded that in setting the husband's income in between what both parties requested, the trial court "had the opportunity to see and hear the witnesses, and was in a better position to judge what [the husband's] earning capacity was," and therefore did not abuse its discretion. *Id.*

In *Bandy v. Bandy*, 17 Neb. App. 97, 756 N.W.2d 751 (2008), we considered a procedurally similar situation to this case, in that a temporary order was entered March 16, 2006, ordering the husband to pay child support and one-half of the monthly mortgage payments for the parties' residence. The husband had been injured on the job and was receiving disability pension benefits and workers' compensation benefits. While the matter was still pending, on August 1, the wife brought a contempt action alleging the husband was in arrears on temporary child support and on the mortgage payments. At the contempt hearing, the husband testified that his injuries hindered his ability to gain employment and that he was doing his best to make the payments. The court found the husband in contempt of the temporary order and suggested that the husband could acquire a part-time job to help pay if he "'really wanted to make this a priority.'" *Id.* at 109, 756 N.W.2d at 760. Trial was held about a year later. The trial court determined that child support should be based entirely on the husband's disability payments from three different sources--his employer, the Department of Veterans Affairs, and workers'

compensation. The trial court did not impute any additional income to the husband, noting that at that point in time, his only income was disability. The wife argued on appeal that the trial court was bound by its previous decision following the contempt hearing wherein it determined that the husband was capable of working, and the trial court therefore erred by failing to impute income at the time of trial. In addressing this argument in the wife's motion for new trial, the trial court stated, "'And as far as earning capacity or ability to work, I think the evidence was somewhat different at trial than it was at previous hearings, and so I am going to overrule the motion for new trial . . . .'" *Id.* This court noted that the facts that existed at the time of the contempt hearing had changed by the time of trial. We pointed out that in the earlier proceeding there was no evidence indicating the husband's inability to work, whereas by trial the husband testified he was in too much pain to work at jobs for which he was otherwise qualified. This court concluded that there was sufficient evidence to establish that the husband was not voluntarily choosing to remain unemployed.

Similarly, in this case, the trial court noted that Jeffrey's income was higher earlier in the proceeding when he was a teacher than it was at the time of trial when he was working for the travel agency. The court also concluded that the notice Jeffrey received from the Department of Education indicating its intention to deny the renewal of his teaching certificate made it unlikely that Jeffrey would be able to continue teaching, and "[m]oreover, even if he is able to obtain a teaching certificate in the future, his convictions for the offenses in issue and the denial of the certification would most likely make continued employment as a teacher unlikely." The trial court also concluded:

> [T]he misdemeanors of which Jeffrey was convicted leading to the loss of his teaching certificate involved domestic assaults and disturbing the public peace while the present action was pending. While it is unlikely that Jeffrey, at the time he committed these crimes, did so in contemplation that his acts might result in a loss of his teaching certificate, the question should be whether he should be deemed to have made voluntary decisions reducing his means, much the same as a person who, by misconduct on the job, gets fired. . . . [H]owever, [Jeffrey's] criminal actions were not on the job per se, but the product of domestic strife and associated emotions.

The district court reasoned that even if Jeffrey's teaching license was eventually reinstated, he would still have difficulty obtaining a teaching job because of his criminal record, and that therefore his actual earnings were a better indication of his earning potential. Child support was set at $580 per month. We note that Tracy was not present at the trial on this issue, and no evidence was offered to indicate that the lower child support obligation would seriously impair the needs of the children. The court further noted that if Jeffrey's earnings increased in the future, Tracy could seek a modification of child support.

The trial judge was presented with testimony solely from Jeffrey and made a determination that Jeffrey's actions in the midst of "domestic strife" were not intended by Jeffrey to result in the loss of his teaching certificate; therefore, his reduced income was not voluntary. We cannot say, based on this record, that the trial court abused its discretion in computing child support based on Jeffrey's actual income rather than his former teaching income.

## CONCLUSION

For the foregoing reasons, we conclude that the district court did not abuse its discretion and we affirm its decision to calculate child support based on Jeffrey's actual earnings.

AFFIRMED.